702 So.2d 517 (1997)
Darrell STEPHENS, individually and in his official capacity as Chief of Police, Terrance Upman, individually and in his official capacity as Assistant Chief of Police, and Annie Worlds, individually and in her official capacity as Major of Police, Petitioners,
v.
John G. GEOGHEGAN and Martha Geoghegan, his wife, Respondents.
CITY OF ST. PETERSBURG, a municipal corporation, Darrell Stephens, individually and in his official capacity as Chief of Police, Terrance Upman, individually and in his official capacity as Assistant Chief of Police, and Annie Worlds, individually and in her official capacity as Major of Police, Petitioners,
v.
John J. GEOGHEGAN and Martha Geoghegan, his wife, Respondents.
Nos. 96-04103, 96-04145.
District Court of Appeal of Florida, Second District.
October 17, 1997.
*520 Michael S. Davis, City Attorney, and William N. Drake, Jr. and Pamela D. Cichon, Assistant City Attorneys, St. Petersburg, for Petitioners.
Joseph M. Ciarciaglino of Ciarciaglino & Coyle, P.A., St. Petersburg, for Respondents.
NORTHCUTT, Judge.
This case involves a suit by a retired St. Petersburg police officer against the City of St. Petersburg and against three members of its police force: Darrell Stephens, the police chief; Terrance Upman, the assistant police chief; and Annie Worlds, a police major. In March 1993 the officer, John Geoghegan, shot and killed a man he suspected of burglary. The police department conducted an internal affairs investigation, then convened a shooting review board. Of the six-member board, the three defendants, Stephens, Upman and Worlds, recommended that Geoghegan be terminated from the force because of the shooting. Geoghegan was discharged, but he was later reinstated with full back pay and benefits after an arbitration hearing. He retired from the police department in 1994.
Geoghegan and his wife then sued the city and the three individual defendants, seeking damages under various theories. Among them were a federal civil rights claim under 42 U.S.C. § 1983, based on an alleged lack of due process at the shooting review board hearing, and claims for defamation and intentional infliction of emotional distress based on Florida law. After answering the complaint, Stephens, Upman and Worlds filed a joint motion for summary judgment, in their individual capacities, contending that they were entitled to judgment in their favor because they have qualified immunity from the Geoghegans' federal civil rights claim and they enjoy absolute immunity from the state tort claims. They filed a second joint motion, in their official capacities and in conjunction with the city, asserting immunity from the state law causes of action. In three separate orders the circuit court denied the defendants' motions; the first order denied the city's and the official-capacity defendants' motion on counts I through III; the second denied the individual-capacity defendants' motion on those same counts; and the third denied both motions as to count IV, the defamation count. As we will explain in detail, we find that the rulings denying Stephens's, Upman's, and Worlds's assertions of immunity, in their individual capacities, are reviewable by petition for writ of certiorari. We hold that the defendants are entitled to relief, and quash, in part, the orders denying that motion for summary judgment.

JURISDICTION
We first address our jurisdiction to consider the defendants' assertion that, in their individual capacities, they enjoy qualified immunity from the federal civil rights action. The springboard for our analysis is Tucker v. Resha, 648 So.2d 1187 (Fla.1994)[1], in which our supreme court held that a nonfinal order denying summary judgment based upon a claim of qualified immunity is appealable "to the extent that the order turns on a question of law." Tucker II, 648 So.2d at 1190. In accordance with Tucker II, the *521 Florida Supreme Court later adopted Florida Rule of Appellate Procedure 9.130(a)(3)(C)(viii), which permits appellate review of nonfinal orders determining:
that, as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law.
This review proceeding was commenced after Tucker II, but before the new rule took effect on January 1, 1997. Therefore, the rule is not applicable here. Beyond that, we note that the order under review does not fall within either the Tucker II jurisdictional pronouncement or the subsequent jurisdictional rule. The order itself fails to state that, as a matter of law, the defendants are not entitled to qualified immunity from the federal claim. At the hearing on the motion, the judge expressed his belief that immunity is "a factually intensive defense ... in all probability not ripe for summary judgment." The court denied the motion without specifying what facts it considered material or disputed. Clearly, though, the court did not decide this issue as one of law. That being so, Tucker II does not grant us jurisdiction to review the decision by interlocutory appeal, nor would rule 9.130(a)(3)(C)(viii). Cf. Hastings v. Demming, 694 So.2d 718, 720 (Fla.1997) (addressing rule 9.130(a)(3)(C)(vi), which permits interlocutory appeal of orders determining, as a matter of law, that a party is not entitled to workers' compensation immunity; court noted that order must specifically state that the immunity is not available as a matter of law).
The same is true in regard to the defendants' assertion of absolute immunity from the state tort actions. Tucker II referred to claims of qualified immunity in the context of federal civil rights claims. The rule embraces both qualified and absolute immunity but, by its terms, restricts its application to orders in federal civil rights actions.[2]
Our jurisdictional inquiry does not end there, however, for we have discretionary jurisdiction to review certain nonfinal orders by certiorari. Fla. R.App. P. 9.030(b)(2)(A). A certiorari petition must pass a three-pronged test before we may grant relief from an erroneous nonfinal order. To obtain a writ of certiorari the petitioner must establish: (1) a departure from the essential requirements of the law; (2) resulting in material injury for the remainder of the case; (3) that cannot be corrected on postjudgment appeal. Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 648 (Fla. 2d DCA 1995). Prior to reaching this standard of review on the merits, we are required to analyze whether a petitioner has properly invoked our jurisdiction. Before we have the power to determine whether an interlocutory order departs from the essential requirements of law, the petitioner must demonstrate that the order causes material harm that cannot be remedied on postjudgment appeal. 658 So.2d at 649.
Here, the defendants correctly argue that absolute and qualified immunity for public officials are not merely defenses to liability; as the terms themselves imply, they protect a public official from having to defend a suit at all. Tucker II, 648 So.2d at 1189; City of Miami v. Wardlow, 403 So.2d 414, 415 (Fla.1981). This entitlement is lost if the defendant is required to go to trial; having been forced to defend the suit, the public official cannot be reimmunized after-the-fact. Tucker II, 648 So.2d at 1189. Because of the nature and purpose of a claim of immunity, an appeal after final judgment would not be an adequate remedy. Accordingly, we hold that Stephens, Upman and Worlds have established the requisite material harm, irreparable on appeal after judgment, needed to invoke our certiorari jurisdiction. We now *522 examine whether the circuit court's orders denying them immunity in their individual capacities depart from the essential requirements of law.[3]

THE STATE LAW CLAIMS
The counts of the Geoghegans' complaint alleging defamation and intentional infliction of emotional distress concern statements by Stephens, Upman and Worlds which supposedly misrepresented the results of the shooting review board. These include:
1. The composition and distribution of a memorandum, for circulation to all police personnel, reporting that the review board determined that the shooting was not justified;
2. Stephens's statements to the St. Petersburg Times and Upman's statements to the Tampa Tribune;
3. Upman's statements to police personnel;
4. Comments by all the defendants during depositions in a civil suit growing out of the shooting filed by the deceased burglary suspect's estate; and
5. Stephens's statements at the arbitration hearing.
In their individual-capacity motion for summary judgment, the defendants asserted that they are absolutely immune from suit for defamation for statements published in the course of their public duties. They also claimed that many of their allegedly defamatory statements were made in judicial or quasi-judicial proceedings and, therefore, could not form the basis of a defamation action. Because we agree with the defendants' contention concerning absolute immunity, we need not reach their second argument.
Public officials who make statements within the scope of their duties are absolutely immune from suit for defamation. See Wardlow, 403 So.2d at 415. Florida law affords this protection to low-level, as well high-placed, public officials. See generally Alfino v. Department of Health and Rehabilitative Services, 676 So.2d 447 (Fla. 5th DCA 1996) (Sharp, J., concurring). This grant of immunity is justified because it is "in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." McNayr v. Kelly, 184 So.2d 428, n. 12 (Fla.1966).
A series of opinions from the district courts of this state have applied this principle. See, e.g., Goetz v. Noble, 652 So.2d 1203 (Fla. 4th DCA 1995); Forman v. Murphy, 501 So.2d 640 (Fla. 4th DCA 1986); Skoblow v. Ameri-Manage, Inc., 483 So.2d 809 (Fla. 3d DCA 1986), approved by Spooner v. Department of Corrections, 514 So.2d 1077 (Fla. 1987); Huszar v. Gross, 468 So.2d 512 (Fla. 1st DCA 1985); Grady v. Scaffe, 435 So.2d 954 (Fla. 2d DCA 1983). The question of whether allegedly defamatory statements are absolutely privileged is one of law to be decided by the court, Resha v. Tucker, 670 So.2d 56, 59 (Fla.1996), and consequently is ripe for determination on motion for summary judgment.
In this case, the record before the circuit court demonstrated that the defendants made the allegedly defamatory statements in the scope of their respective duties. Paragraph fifteen of the Geoghegans' complaint, which applies to both the defamation and the emotional distress counts, states: "At all times material hereto, the individual Defendants were acting under the color of law and in their official capacities for the CITY OF ST. PETERSBURG, and all of their actions were approved and ratified by the defendant CITY." From the record the parties provided, we discern no attempt by the Geoghegans to disavow this allegation, which seems, by itself, to foreclose any argument *523 that these statements were made during anything but the normal course of the defendants' duties.
The Geoghegans' specific allegations confirm that view. Their complaint alleges disclosure of defamatory material in three distinct categories. First, they claim that Stephens, Upman and Worlds disseminated information to fellow officers. This clearly lies within the ambit of each's duties in the police department.
Second, they allege the defendants published defamatory statements during judicial and quasi-judicial proceedings (the civil suit by the deceased suspect's estate against Geoghegan, and the arbitration hearing in which Geoghegan sought reinstatement). While the defendants' respective job descriptions may not have required participation in these proceedings, the Florida Supreme Court has decided that the scope of an official's duties extends beyond enumerated, required tasks, and includes discretionary duties that are associated with a given position. See Wardlow, 403 So.2d at 416 (citing Barr v. Matteo, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959)); see also Goetz, 652 So.2d at 1205 (rejecting the narrow notion that protection applies only to statements made within the scope of the official's statutory authority or power); cf. Albritton v. Gandy, 531 So.2d 381 (Fla. 1st DCA 1988) (holding that county commissioner who had no authority to hire or fire employees exceeded the scope of his duties in making statements resulting in the discharge of plaintiff from county employment, thereby tortiously interfering with her business relations with the county, without the benefit of absolute immunity).
Third, Stephens and Upman allegedly made defamatory comments to reporters for area newspapers. Absolute immunity for public officials faced with accusations of defamation applies when statements are made to media. See Hauser v. Urchisin, 231 So.2d 6 (Fla.1970); Huszar, 468 So.2d at 512; Mueller v. The Florida Bar, 390 So.2d 449 (Fla. 4th DCA 1980). Here, high-ranking police officers disseminated information to media outlets concerning a matter of serious public concern: the investigation into a shooting by a police officer that resulted in a citizen's death, and the police department's procedure and findings regarding discipline of the officer. Law enforcement agencies routinely brief the media on matters of public concern, and nothing before the circuit court suggested that the remarks made to the reporters fell outside the scope of these officers' duties.
In sum, our review of the record discloses no genuine issue of material fact regarding whether the officers' statements were made in the normal scope of their duties; indeed, the Geoghegans' complaint seems to concede as much. Consequently, under Wardlow, they are absolutely immune from suit for defamation. 403 So.2d at 415. The circuit court erred in its belief that there were issues of material fact precluding summary judgment in the defendants' favor on this point. If we were reviewing its decision by appeal, that error would warrant reversal. The question remains whether the error could be considered a departure from the essential requirements of law so as to warrant a writ of certiorari.
The First District's opinion in Tucker v. Resha, 610 So.2d 460 (Fla. 1st DCA 1992), provides a helpful analysis of certiorari jurisdiction in the context of claims of immunity by public officials in defamation cases. Although the supreme court ultimately quashed the First District's holding that issues of qualified immunity in federal civil rights actions were not subject to review by interlocutory appeal, Tucker II, 648 So.2d 1187, the First District's opinion contains a cogent discussion of certiorari review.
Throughout its opinion, that court gave appropriate deference to the principle that certiorari is not to be used to sidestep the rule of law narrowly restricting those nonfinal orders subject to review. The court emphasized that review by certiorari is discretionary and narrow in scope, available in only limited, exceptional circumstances. Tucker I, 610 So.2d at 463-64. The First District found, as we have here, that the circuit court's denial of immunity constituted harm which was not subject to remedy on plenary appeal. Ultimately, however, it held that the petitioners had failed to establish a departure from the essential requirements of law, and *524 denied the petition. The court's rationale for this conclusion was that its detailed review of the record disclosed genuine issues of fact material to the counts under consideration, thus foreclosing summary judgment on the issue of qualified immunity. Tucker I, 610 So.2d at 464-67.
Arguably implicit in that reasoning is the suggestion that if the First District had determined, as we have here, that the defendant public official was entitled to summary judgment effectuating her immunity from suit, it would have considered the denial of her motion to be a departure from the essential requirements of law; otherwise, what would have been the purpose of the court's careful scrutiny of the record? But, as tempting as that logic may be, our own deference to the limitations of our certiorari power makes us reluctant to justify its use based on such an inference. After all, it could be argued just as easily that in Tucker I the First District found merely that the circuit court had committed no legal error in denying the motion for summary judgment. It did not state that, if the circuit court had erred, the error necessarily would have constituted a departure from the essential requirements of law that warranted quashal by writ of certiorari.
We do, nonetheless, find precedent from this court which persuades us that the policy considerations behind the doctrine of absolute immunity mandate certiorari intervention when a trial court improperly denies summary judgment and thus requires public officials to defend actions for which they are clothed with this immunity. In Pearlstein v. Malunney, 500 So.2d 585 (Fla. 2d DCA 1986), the court granted a certiorari petition by medical malpractice defendants who complained of the circuit court's refusal to dismiss the action for the plaintiffs' failure to give the presuit notice prescribed by section 768.57, Florida Statutes (1985). That statute, enacted as part of the Comprehensive Medical Malpractice Reform Act of 1985, required medical malpractice claimants to give each prospective defendant a notice of intent to file suit, and forbade the filing of suit for a period of ninety days following the giving of the notice. The statute's purpose was to reduce litigation and thereby help to ensure the affordability and availability of medical services.
The Pearlstein court first found that the petitioners had demonstrated the requisite irreparable harm that could not be remedied by direct appeal. "Therefore," the court wrote, "for petitioners to receive the benefits conferred upon them (and, in the estimation of the legislature, upon the citizens of Florida) by the statute, it is necessary and appropriate for us to intervene at this juncture." Pearlstein, 500 So.2d at 587. The court went on to justify its intervention in light of a perceived legislative concern for the expeditious handling of such claims. Id. at 587-88. Other district courts of appeal followed suit. See Citron v. Shell, 689 So.2d 1288 (Fla. 4th DCA 1997); Sova Drugs, Inc. v. Barnes, 661 So.2d 393 (Fla. 5th DCA 1995); Miami Physical Therapy Associates, Inc. v. Savage, 632 So.2d 114 (Fla. 3d DCA 1994).
As we did in Pearlstein, we believe that the issue in this case merits our early intervention by certiorari. Pearlstein involved the defendants' right to evaluate and attempt to settle a claim before being sued. We expressed the fear that if plaintiffs who had not complied with the presuit notice requirements were successful in obtaining a judgment that was the result of a fair trial, appellate courts likely would not be inclined to reverse solely on the ground that the defendants had not been afforded their presuit opportunity to settle the claim. Pearlstein, 500 So.2d at 587. Here we are concerned with whether the defendants may be sued at all. On appeal from a final judgment an appellate court would be wholly incapable of restoring the defendants' rightful immunity from having to defend the suit.
Further, just as the statutory condition precedent in Pearlstein served an important public purpose, so does the immunity at issue here. In Tucker II, our supreme court noted that when a public official is erroneously denied immunity from suit, society as a whole pays the "social costs" of "the expense of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." Tucker II, 648 So.2d at 1190 *525 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982)).
Finally, as in Pearlstein, we perceive a policy-based concern for the expeditious resolution of these issues. Indeed, that very concern moved the supreme court to immediately permit interlocutory appeals of orders denying summary judgment based upon claims of qualified immunity to a federal civil rights claim. In so doing, the court observed that if such orders are not subject to interlocutory review, "the qualified immunity of public officials is illusory and the very policy that animates the decision to afford such immunity is thwarted." Tucker II, 648 So.2d at 1190.
As we have seen, the language in Tucker II is too narrow to permit review by interlocutory appeal in this case. But, although we are mindful of the principle that certiorari should not be used to circumvent jurisdictional limitations on interlocutory appeals, we cannot ignore that the foregoing factors apply with equal force to immunity from state claims as well as from federal claims. Moreover, the gravity of a mistaken denial of immunity from suit is the same whether the denial stems from a determination of law or from an erroneous belief that material issues of fact preclude summary judgment on the issue.[4]
We hold that when a public official moves for summary judgment on the ground that he or she enjoys immunity from suit arising under either state or federal law, and the record conclusively demonstrates that the public official is entitled to immunity, it is a departure from the essential requirements of law to deny it.[5] Such is the case with respect to the state law defamation action below. The record before the circuit court conclusively demonstrated that the officers' statements were made in the normal scope of their duties. The circuit court's erroneous conclusion that the unrefuted facts failed to establish that the individual-capacity defendants are entitled to absolute immunity from defending the defamation action is a departure from the essential requirements of law.
Next we address whether the Geoghegans' count alleging intentional infliction of emotional distress can survive in the face of our determination that the defendants are entitled to immunity on the defamation count. The parties agree that if the tort count accompanying the one alleging defamation is simply a restatement, or recasting, of the defamation action, it is subject to the same immunity protections. See Goetz, 652 So.2d 1203 (finding that an accompanying claim for intentional interference with a contract was barred by the immunity associated with the defamation count). The Geoghegans attempt to salvage their emotional distress action by arguing that the defendants' memorandum to police personnel, which serves as a partial basis for the defamation claim, was "intentionally drafted to deceive" those who read it, setting it apart from the defamation claim. This argument emasculates the notion of absolute immunityletting survive a claim that the offending speech or writing was intentionally designed to provoke a given response, while protecting the tortfeasor from the substantive tort of defamation itself. We hold that the defendants' writings and comments, for which they are immune from suit for defamation, are likewise protected against a retooling of the claim couched in terms of intentional infliction of emotional distress. The circuit court's order denying the defendants absolute immunity from this cause of action, in *526 their individual capacities, is also a departure from the essential requirements of law.[6]

THE FEDERAL CIVIL RIGHTS CLAIM
The plaintiffs' claim under 42 U.S.C. § 1983 is based on an alleged lack of procedural due process in the shooting review board proceeding that led to Geoghegan's discharge from the police force. In Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the United States Supreme Court held that "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thus, a qualified immunity defense must be evaluated in two steps. First, the defendant must demonstrate that he or she performed the acts in question as part of a discretionary governmental function. The burden then shifts to the plaintiff to prove that the defendant's conduct violated clearly established statutory or constitutional rights. Zeigler v. Jackson, 716 F.2d 847 (11th Cir.1983). If the public official's conduct did not violate a clearly established statutory or constitutional right, the official is immune.
Here, there can be no question that the defendants satisfied their initial burden. Certainly, participation in a shooting review board as part of the police department's internal disciplinary process fell within the defendants' discretionary governmental functions as police officers. Indeed, paragraph ten of the Geoghegans' complaint alleged that the shooting review board, consisting of Geoghegan's chain of command and the training sergeant, was convened pursuant to a departmental general order.
Our review of the record also discloses that the defendants' conduct did not violate Geoghegan's clearly established statutory or constitutional rights. The relevant issue is "whether the legal norms actually violated by the defendant were clearly established at the time of the challenged actions...." Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411, 426 (1985). To determine whether the circuit court's denial of qualified immunity from the federal civil rights claim is a departure from the essential requirements of law, we must review the established norms of due process existing at the time of the shooting review board hearing.
In 1985, the United States Supreme Court discussed an employee's procedural due process rights[7] in the context of a discharge. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). It noted that an employee who is threatened with the loss of a job in which he has a property right[8] is entitled to procedural due process, and further discussed what was necessary to preserve this right before termination. The Loudermill Court observed that an elaborate pretermination hearing is not required. It held that, before discharge, the employee must have notice of the charges against him. He must be given an explanation of the employer's evidence and an opportunity to present reasons, either in person or in writing, why the proposed action should not be taken. 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. The Court's holding rested in part on the fact that the pertinent state law provided an employee with a full post-termination hearing. Loudermill fixed the boundaries of procedural due process relevant to Geoghegan's case at the time of his termination.
The record before the circuit court established that prior to Geoghegan's discharge he was given an opportunity to present, and did give, his version of the incident to internal affairs investigators. Several days before *527 the review board met, Geoghegan was given a memorandum advising him that the board was reviewing his "intention[al] discharge of firearm resulting in death." The memorandum stated that he could review the evidence from the internal affairs investigation before the hearing, and could make an oral or written statement to the shooting review board. Geoghegan chose not to do so.
The undisputed facts show that the individual defendants provided Geoghegan with sufficient procedural due process before his termination. Moreover, as in Loudermill, Geoghegan had the opportunity for a full hearing, post-termination. Because Stephens, Upman and Worlds did not violate Geoghegan's clearly established statutory or constitutional rights, as delineated in Loudermill, they are entitled to qualified immunity from his federal civil rights claim. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. Again, because the record conclusively demonstrates that these public officials are entitled to immunity, the circuit court's order denying them immunity from that claim is a departure from the essential requirements of law.

CONCLUSION
We grant, in part, the petitions for writs of certiorari. We quash the portions of the circuit court's orders denying Stephens, Upman and Worlds, in their individual capacities, absolute immunity from the Geoghegans' claims of defamation and intentional infliction of emotional distress, and denying them qualified immunity from the claim based on 42 U.S.C. § 1983. We remand for the court to enter summary judgment on the immunity issues in the individual defendants' favor.
The defendants also have asserted that the circuit court erred in denying their individual-capacity motion directed to the federal statutory claim on the issues of their entitlement to summary judgment on the merits and Mrs. Geoghegan's ability to state a claim for loss of consortium. On these points, the defendants have failed to demonstrate the requisite irreparable harm necessary to invoke our certiorari jurisdiction. Therefore, we dismiss the portion of their petition addressing these claims. Parkway Bank, 658 So.2d at 650.
We also dismiss the portion of the petition challenging the denial of the defendants' motion in their official capacities and in conjunction with the City of St. Petersburg. A suit against a defendant in his official capacity is, in actuality, a suit against the governmental entity which employs him. See § 768.28(9)(a), Fla. Stat. (1991); Dept. of Education v. Roe, 679 So.2d 756, 759 (public officials who defend tort suits against the state are not sued in their personal capacities); cf. Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991) (under 42 U.S.C. § 1983, official-capacity suits are merely another way of pleading an action against the entity of which the officer is an agent). The material harm, irreparable on postjudgment appeal, that impelled us to exercise our certiorari jurisdiction with regard to the individual defendants, that is, denial of immunity from defending a suit, with its attendant expenses, diversion of official energy and deterrence of able citizens from pursuing public employment, is simply not present in a suit against a municipality.
Certiorari granted and orders quashed in part, certiorari dismissed in part.
THREADGILL, A.C.J., and QUINCE, J., concur.
NOTES
[1] In this opinion we refer to three of a quartet of cases involving the Tucker and Resha litigants. For clarity, we provide short synopses of those decisions:

Tucker I: Tucker v. Resha, 610 So.2d 460 (Fla. 1st DCA 1992). Certiorari review of an order denying defendant's motion for summary judgment based on qualified immunity from a federal civil rights claim. Order quashed by Tucker II.
Tucker II: Tucker v. Resha, 648 So.2d 1187 (Fla.1994). Florida Supreme Court holds that review by interlocutory appeal is available on the issue raised in Tucker I, paving the way for enactment of Florida Rule of Appellate Procedure 9.130(a)(3)(C)(viii).
Tucker III: Tucker v. Resha, 634 So.2d 756 (Fla. 1st DCA 1994). Violation of privacy provisions of the Florida Constitution does not give rise to a cause of action for money damages.
Tucker IV: Resha v. Tucker, 670 So.2d 56 (Fla. 1996). Tucker III is approved by the Florida Supreme Court.
[2] We note that Goetz v. Noble, 652 So.2d 1203 (Fla. 4th DCA 1995), in which the court reviewed a denial of qualified immunity from state tort claims as an appealable nonfinal order, was decided after Tucker v. Resha, 648 So.2d 1187 (Fla.1994), but before the supreme court adopted Florida Rule of Appellate Procedure 9.130(a)(3)(C)(viii). In a later decision, the supreme court declined to extend Tucker II "beyond the circumstances of that case." Department of Education v. Roe, 679 So.2d 756, 758 (Fla.1996) (refusing to permit interlocutory appeal of a nonfinal order denying a claim to sovereign immunity). Rule 9.130(a)(3)(C)(viii) plainly states that it is applicable only to claims arising under federal law.
[3] Stephens, Upman and Worlds initially filed their challenge to the portion of the order denying their claim of qualified immunity to the federal civil rights cause of action as both an interlocutory appeal and as a petition for writ of certiorari. This court made a preliminary determination that the denial of immunity from suit on the federal claim was appealable as a nonfinal order. As we have discussed, we now recognize that Tucker II does not confer jurisdiction here. Therefore, on our own motion we have consolidated the case addressing the state claims, which was filed as a petition for writ of certiorari, with the case addressing the federal claims, and review both under our jurisdiction to issue writs of certiorari.
[4] To be sure, the defendants and society suffer the same costs when legitimate issues of material fact preclude summary judgment but are later resolved in the defendants' favor at trial. But when a court denies summary judgment in the face of disputed issues of material fact, it commits no legal error, let alone a departure from the essential requirements of law. See Tucker I, 610 So.2d 460. In those instances, the denial of immunity prior to trial is unavoidable and irremediable.
[5] We emphasize that our holding is applicable only to cases where the public official is seeking immunity from suit. Our holding is not applicable to an official seeking immunity from liability. Cf. Roe, 679 So.2d at 759 (refusing to expand interlocutory appeal right established in Tucker II, 648 So.2d 1187, to order denying sovereign immunity; sovereign immunity is an immunity from liability and its benefits will not be lost simply because review must wait until after judgment).
[6] The defendants' petition also contended they are immune from the Geoghegans' state law claim of conspiracy. In their response, the Geoghegans advised that they have not asserted a separate conspiracy claim. This concession obviates the need for us to address the defendants' argument on this point.
[7] The Geoghegans correctly concede that they have no substantive due process claim; their action is based on an alleged violation of procedural due process.
[8] For purposes of this certiorari petition, we presume that Geoghegan had a property interest in his position as police officer.