826 So.2d 382 (2002)
BOARD OF REGENTS OF the STATE of Florida, Rollin C. Richmond, Tennyson Wright, Darrell J. Fasching, S. David Stamps, Winston Bridges, Jack B. Moore, Philip L. Smith, and Michael Amen, Petitioners,
v.
Robert E. SNYDER, Respondent.
Nos. 2D01-299, 2D01-382.
District Court of Appeal of Florida, Second District.
July 19, 2002.
Rehearing Denied September 5, 2002.
*385 Thomas M. Gonzalez and Deborah S. Crumbley of Thompson, Sizemore & Gonzalez, Tampa; and Olga J. Joanow, University of South Florida, Tampa, for Petitioners.
Mark F. Kelly and Robert F. McKee of Kelly & McKee, P.A., Tampa, for Respondent.

CONSOLIDATED
ALTENBERND, Judge.
The Board of Regents ("the Board") and Rollin C. Richmond, Tennyson Wright, Darrell J. Fasching, S. David Stamps, Winston Bridges, Jack B. Moore, Philip L. Smith, and Michael Amen ("individual Petitioners") appeal a nonfinal order denying their motion for summary judgment in an action pursuant to 42 U.S.C. § 1983 filed against them by Robert E. Snyder ("Mr. Snyder"). In the alternative, the Board and the individual Petitioners petition this court for a writ of certiorari arguing that the trial court departed from the essential requirements of the law when it denied summary judgment because they are immune from suit. We conclude that the trial court's order denying summary judgment in this case is reviewable by writ of certiorari. Because we conclude that the Board has sovereign immunity from suit and the individual Petitioners have qualified immunity from suit, we quash the trial court's order denying summary judgment and direct the trial court to enter summary judgment in favor of the Board and the individual Petitioners.

I. FACTS
Mr. Snyder has been a professor at the University of South Florida since 1980. He became a tenured professor at USF in the American Studies Department four years later. In 1992, Mr. Snyder filed three complaints with the State of Florida Ethics Commission against most of his colleagues in the American Studies Department. His initial complaints primarily alleged misrepresentations in tenure applications filed by his colleagues, improper use of confidential files, and improper office supervision. The Florida Ethics Commission ultimately dismissed the complaints.
*386 In February 1993, Mr. Snyder discovered that the American Studies Department would be merging with the Humanities Department. He submitted a letter to the Dean of his department requesting to be transferred out of the American Studies Department when it merged with the Humanities Department because he believed it would harm his reputation and his career.[1] He also requested a transfer because he was not getting along with his colleagues in the American Studies Department. In an effort to accommodate Mr. Snyder's request, the Dean attempted to transfer him to the History Department at USF's Tampa campus. The Dean notified Mr. Snyder that he would not be included in the new merged department. The History Department, however, declined to accept Mr. Snyder into its Department. Mr. Snyder was then transferred to the History Department at USF's St. Petersburg campus for a trial period.
In 1995, during Mr. Snyder's time at the St. Petersburg campus, he filed a fourth complaint with the Florida Ethics Commission against two more professors. Mr. Snyder alleged that those professors received teacher incentive awards while serving on the awards committee. The Florida Ethics Commission dismissed that complaint as well. In October 1995, Mr. Snyder was transferred to the Lakeland campus. Mr. Snyder is currently working at USF's Tampa campus in the Interdisciplinary Studies Department.
In December 1996, Mr. Snyder filed his amended complaint in this lawsuit, alleging that the individual Petitioners and the Board violated his First Amendment rights by committing various acts of retaliation against him because of his complaints against them. Mr. Snyder sued the parties pursuant to 42 U.S.C. § 1983, seeking monetary relief against the individual Petitioners and equitable relief against the Board. On April 25, 2000, the Board and the individual Petitioners filed a motion for summary judgment raising sovereign and qualified immunity respectively. After a hearing was held on the motion for summary judgment, the trial court denied the motion.

II. JURISDICTION
Florida Rule of Appellate Procedure 9.130(a)(3)(c)(viii) allows an appeal of a nonfinal order that determines "that as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law." In this case, however, the trial court denied summary judgment because it found that genuine issues of material fact remained as to whether Mr. Snyder's complaints played a substantial part in the challenged employment decision. The court stated, "As such, this court is precluded from granting summary judgment and finds that it is premature to address questions of law." The trial court's order did not reject immunity as a matter of law. Therefore, we do not have jurisdiction to review that order on direct appeal. See Vermette v. Ludwig, 707 So.2d 742, 744 (Fla. 2d DCA 1997); Stephens v. Geoghegan, 702 So.2d 517, 520 (Fla. 2d DCA 1997).
On the other hand, Florida Rule of Appellate Procedure 9.030(b)(2)(A) gives us discretionary authority to review nonfinal *387 orders via certiorari. To obtain a writ of certiorari, the petitioner must show (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal. See Stephens, 702 So.2d at 521; Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 648 (Fla. 2d DCA 1995).
This court has previously held that "[b]ecause of the nature and purpose of a claim of immunity, an appeal after final judgment would not be an adequate remedy." Stephens, 702 So.2d at 521. Qualified immunity protects public officers from liability and suit. Id.; see also Vermette, 707 So.2d at 744. Sovereign immunity protects state government from interference by plaintiffs and state courts. Hill v. Dep't of Corr., 513 So.2d 129 (Fla.1987). Thus, if the Board or the individual Petitioners are required to go to trial, they cannot later be reimmunized from suit. As such, we conclude that the Board and the individual Petitioners established the material harm, irreparable on appeal after judgment, necessary for this court to invoke its certiorari jurisdiction.
Finally, when the record conclusively demonstrates entitlement to immunity, it is a departure from the essential requirements of the law for a trial court to deny a motion for summary judgment on that basis. Stephens, 702 So.2d at 525. As we will discuss in sections II, III, and IV below, the record in this case conclusively demonstrates that the Board and the individual Petitioners are entitled to immunity from suit under 42 U.S.C. § 1983. Thus, the trial court departed from the essential requirements of the law when it denied their motion for summary judgment.[2]

III. SOVEREIGN IMMUNITY
The Board argues that it is entitled to sovereign immunity concerning Mr. Snyder's claim under 42 U.S.C. § 1983. It is well established in both federal and state courts that a state and its agencies are immune from suit arising under 42 U.S.C. § 1983. See Spooner v. Dep't of Corr., 514 So.2d 1077, 1078 (Fla.1987); Hill, 513 So.2d at 132. Although this state has waived its sovereign immunity for state tort actions, that waiver does not extend to civil rights actions. See § 768.28, Fla. Stat. (2000); Spooner, 514 So.2d at 1078; Hill, 513 So.2d at 132. Federal law is enforceable in state courts, but only municipal corporations, local government entities, individual officers, and other actors that are not arms of the state may be liable under 42 U.S.C. § 1983. See Howlett By & Through Howlett v. Rose, 496 U.S. 356, 376-77, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).
The Board was sued as an entity in this case. This is not an action against named members of the Board of Regents. The Board, as part of the State University System, is an arm of the state. See § 240.2011, Fla. Stat. (2000). Thus, the Board of Regents is immune from claims pursuant to 42 U.S.C. § 1983 in state and federal court. The trial court departed from the essential requirements of the law when it refused to recognize the Board's immunity.

IV. MR. SNYDER'S FIRST AMENDMENT CLAIM
The analysis of the individual Petitioners' claim of qualified immunity is some-what *388 complex because the immunity depends, in part, upon the nature of the constitutional right asserted by Mr. Snyder and the extent to which that right is well established within the law. First Amendment claims are particularly difficult to maintain under § 1983 as it is only the "extraordinary" First Amendment claim that survives a qualified immunity defense. Dartland v. Metro. Dade County, 866 F.2d 1321, 1323 (11th Cir.1989). This is a result of the fact that no brightline rules exist in the case law describing violations of First Amendment rights.
Mr. Snyder's claim under 42 U.S.C. § 1983 is based on alleged retaliation by the individual Petitioners against him for exercising his First Amendment right of free speech when he complained to the Commission about various actions of his colleagues. The retaliatory acts complained of include, among several others, being removed from the American Studies Department without being consulted, being transferred from USF's Tampa campus to the St. Petersburg campus and later to the Lakeland campus and back to Tampa, being removed from his offices in each of these campuses when he was transferred from each, not being treated fairly with regard to pay increases, alteration of his class schedules, and being passed over for teaching overload in USF's Fort Myers campus.
In certain circumstances, a First Amendment retaliation claim is a legal possibility.[3] First Amendment law provides that a state employer shall not retaliate against a state employee for engaging in constitutionally protected speech.[4]Rankin v. McPherson, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); J.R. Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir.1989). A public employee's freedom of speech, however, is not absolute. J.R. Bryson, 888 F.2d at 1565. To be actionable, such a First Amendment claim must satisfy a four-step inquiry. See Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Pickering v. Bd. of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); J.R. Bryson, 888 F.2d at 1565-66.
Under Pickering, when a public employee alleges wrongful termination or an adverse employment action due to the exercise of free speech, the employee must show by a preponderance of the evidence that (1) the employee's speech is on a matter of public concern, (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech in order to promote the efficiency of the public services it performs through its employees (this step is known as the Pickering balancing test), and (3) the employee's speech played a substantial part in the employer's decision to demote or discharge the employee. If the employee succeeds in showing the preceding factors, the employer must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. J.R. Bryson, 888 F.2d at 1565-66. The first two prongs are determined *389 by the court and the last two are typically jury questions. Id.
The weakness of Mr. Snyder's claim as it relates to the very first prong of the Pickering analysis strengthens the individual Petitioners' claim of immunity in this case. It is highly doubtful that any of Mr. Snyder's speech is on a matter of public concern. Generally, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of personal interest," there is no First Amendment protection. Connick, 461 U.S. at 147, 103 S.Ct. 1684. If the speech is not related to a political, social, or other concern to the community, it is of a personal nature. Id. at 146, 103 S.Ct. 1684.
Mr. Snyder claims that his complaints were a matter of public concern because they were violations of state law and ethical standards that were a threat to the public's welfare. Mr. Snyder specifically complained of misrepresentations of credentials to obtain financial gain, tenure, and promotion; improper use of confidential student materials to obtain financial gain; and use of a USF secretary to perform personal tasks.
The record reflects, however, that Mr. Snyder admitted making these complaints because they concerned his personal career. For example, Mr. Snyder complained about one professor's alleged dishonesty when she provided false information in her tenure application and equity study. He admitted his complaint was motivated by her allegedly not giving him credit for some of his work and because she was making herself look better at his expense. This complaint was filed four years after the alleged acts occurred. Also, Mr. Snyder's complaints against another professor were brought because she was discouraging students from taking his class so that they would take her class instead. Another complaint concerned yet another professor's secretary allegedly performing outside work on USF time. Mr. Snyder admitted he was personally impacted because the secretary was not completing work for him. Thus, Mr. Snyder was speaking primarily as an employee upon matters of personal interest rather than as a citizen upon matters of public concern. Finally, we agree with the individual Petitioners that Mr. Snyder's fourth complaint against the two professors at the St. Petersburg campus was merely a personal grievance with the university that was transformed into a complaint with the Commission. Mr. Snyder had previously complained because he had not received a teacher incentive award and that two members of the award committee received awards. He later filed his complaint with the Florida Ethics Commission based on the same set of facts.
It appears that all of Mr. Snyder's complaints in this case concern internal administrative matters and personal grievances. We are not convinced that Mr. Snyder's speech was in any way related to political or social matters, or otherwise concerned the community. However, we do not need to decide whether Mr. Snyder's complaints were outside the protected zone in this case. As explained in section V below, for purposes of qualified immunity in this case, we only need to establish whether a reasonable person would regard Mr. Snyder's complaints as protected speech.

V. QUALIFIED IMMUNITY
Having analyzed the difficulties of Mr. Snyder's case, we can now turn directly to the issue of qualified immunity. Qualified immunity protects government actors performing discretionary functions from liability and suit for civil damages *390 unless their conduct violates clearly established federal statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998).[5] In federal court, there are two steps in evaluating the qualified immunity defense. The defendants must first demonstrate that they acted within their discretionary governmental duties. Once that is established, the plaintiff must show that the defendants' conduct violated his clearly established statutory or constitutional rights. See, e.g., Zeigler v. Jackson, 716 F.2d 847 (11th Cir.1983); GJR Invs., 132 F.3d at 1366. Because this is a summary judgment in state court, we assume that the burden was upon the individual Petitioners to establish both steps of entitlement rather than shifting the burden to Mr. Snyder to show that his clearly established First Amendment right was violated.
With regard to the first step, there is no dispute that the individual Petitioners were performing within their discretionary governmental functions. All of the alleged retaliatory actions that Mr. Snyder complains of revolve around transfers, promotions, performance reviews, pay increases, class schedules, and other general departmental decisions. The individual Petitioners made these decisions as part of their day-to-day duties and were acting within the scope of their employment. Mr. Snyder does not claim otherwise.
Thus, qualified immunity in this case hinges upon whether Mr. Snyder's First Amendment right was clearly established. In general, a right is deemed "clearly established" only when case law has developed that right in a "concrete factual context" so that it is evident to a reasonable government actor that his actions violate federal law. GJR Invs., 132 F.3d at 1366 (citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Within the context of First Amendment rights, a right is clearly established only if the plaintiff can provide case precedent involving essentially the same speech or show that no reasonable person could believe that the first two prongs of Pickering had not been met. Martin v. Baugh, 141 F.3d 1417, 1419 (11th Cir.1998).
There is no case law involving essentially the same speech involved in this case that would have been available to the individual Petitioners at the time of their actions. Further, as explained earlier, this court doubts that Mr. Snyder's speech fits within the first prong of Pickering. Even if Mr. Snyder's speech marginally fits within that prong, there is no question that reasonable people, including the individual Petitioners, were free to believe that Mr. Snyder's speech was not protected under the first two prongs of Pickering. Accordingly, the trial court departed from the essential requirements of the law when it denied the individual Petitioners' claims of qualified immunity.
Based on the foregoing, we conclude that the Board is entitled to sovereign immunity and the individual Petitioners are entitled to qualified immunity on Mr. Snyder's claims under 42 U.S.C. § 1983. Therefore, we grant certiorari, quash the trial court's order denying summary judgment, and direct the trial court to enter summary judgment in favor of the Board and the individual Petitioners.
CASANUEVA and SALCINES, JJ., concur.
NOTES
[1] Mr. Snyder opined in his letter that humanities is generally regarded as a "soft Liberal Arts discipline" and that the Department of Humanities at USF in particular has "a low profile and a low productivity reputation." He felt compelled to request a transfer because, as he stated, "I consider the merger damaging to my academic reputation and detrimental to my scholarly career...."
[2] Admittedly, this jurisdictional structure is a little unusual. If the trial court denies a claim of immunity "as a matter of law," this court reviews the order by appeal. If the trial court refuses to rule "as a matter of law" on a claim of immunity when the facts and the law warrant such a ruling, we review the order by certiorari.
[3] It should be emphasized that Mr. Snyder admits that he has no state or federal statutory claim under Florida's Whistle-Blower Act, section 112.3187-.31895, Florida Statutes (2000).
[4] The case law in this arena often refers to the actions of a state employer against a state employee. We realize that the individual Petitioners are not Mr. Snyder's "employers"; however, they were acting under color of state law as Mr. Snyder's supervisors or authority figures and are being sued in that capacity.
[5] There are no federal statutory rights at issue in this case.