IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION
and BENJAMIN G. JOHNSON,
individually,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-1406

       Petitioners,

v.

TIMOTHY JEFFREY,

       Respondent.

_____/

Opinion filed October 15, 2015.

Petition for Writ of Certiorari.

Pamela Jo Bondi, Attorney General, and Antony D. Constantini, Assistant Attorney General, Tallahassee, for Petitioner Florida Fish and Wildlife Conservation Commission.

Heath R. Stokley and Kerry A. Parsons of Nabors, Giblin & Nickerson, P.A., Tallahassee, and Edward A. Dion, Nabors, Giblin & Nickerson, P.A., Ft. Lauderdale, for Petitioner Benjamin G. Johnson.

Marie A. Mattox and Lisa Lambert of Marie A. Mattox, P.A., Tallahassee, for Respondent.


WETHERELL, J.

       The Florida Fish and Wildlife Conservation Commission (FWCC) and FWCC

officer Benjamin Johnson petition for certiorari review of the order denying their

motions for summary judgment based on sovereign immunity and qualified immunity, respectively. We dismiss FWCC's petition because it failed to establish the irreparable harm necessary to obtain certiorari review, but we grant Officer Johnson's petition in part and quash the challenged order insofar as it denied him qualified immunity from the false arrest claim asserted by Respondent under 42 U.S.C. § 1983.

## I. Factual and Procedural Background

This case stems from a dropped cup. Although there is conflicting evidence as to what kind of cup it was[1] and how it was dropped,[2] it is undisputed that Respondent dropped the cup on the side of a road; that Officer Johnson told him several times to pick it up; and that Respondent refused to pick up the cup, cursed at Officer Johnson, and walked away. It is also undisputed that when Officer Johnson attempted to grab Respondent's arm to stop him from walking away so he could issue him a citation for littering, Respondent pushed Officer Johnson's hand away and started fighting with him. Respondent claimed that he did not know that Officer Johnson was a law enforcement officer because he is blind and Officer Johnson did not identify himself as

---

[1] Respondent testified in his deposition that the cup was a styrofoam coffee cup from McDonald's, whereas Officer Johnson testified that the cup was "a red cup, white inside, plastic cup."

[2] Respondent testified in his deposition that he accidentally dropped the cup when he slipped and fell as he was walking along the road and that he was unable to find the cup when the wind blew it away because he is blind. By contrast, Officer Johnson testified in his deposition that Respondent intentionally "flung [the cup] to the curb of the road" as he was walking.

2

an officer until the physical altercation was well underway.[3] Respondent was arrested and charged with battery on a law enforcement officer and resisting an officer with violence, but the criminal charges were subsequently *nol prossed*.

After the criminal charges were dropped, Respondent filed suit against FWCC and Officer Johnson, asserting common law claims for negligence (against FWCC), battery (against FWCC and Officer Johnson), false arrest (against FWCC and Officer Johnson), malicious prosecution (against Officer Johnson), and intentional infliction of emotional distress (against Officer Johnson). The suit also included a § 1983 claim against Officer Johnson alleging two separate Fourth Amendment violations: false arrest and excessive use of force. FWCC and Officer Johnson asserted various defenses in their answers, including sovereign immunity and qualified immunity, respectively.

FWCC and Officer Johnson filed motions for summary judgment. FWCC asserted that it was entitled to judgment as a matter of law on the battery and false arrest claims based on the facts asserted by Respondent in his deposition, and it argued that the denial of its motion would be "a denial of sovereign immunity." Officer Johnson asserted that he was entitled to qualified immunity from the § 1983 claims and that the other claims against him failed as a matter of law.

---

[3] Although Officer Johnson testified in his deposition that he identified himself as a law enforcement officer when he first told Respondent to pick up the cup (and several times thereafter), we present the facts as the trial court was required to view them: in

3

The trial court held a hearing on the motions for summary judgment, and at the conclusion of the hearing, the court orally granted the motions.[4] However, before the court memorialized its ruling in a written order, Respondent filed a motion for reconsideration in which he argued that summary judgment should be denied because there was a factual dispute as to whether Officer Johnson identified himself as a law

the light most favorable to Respondent.

[4] The trial court explained its ruling as follows:

> [U]nder the circumstances here, there was probable cause to do that initial stop, to inquire with [Respondent] regarding why he left that cup on the side of the road. [Respondent] admitted he left the cup on the side of the road. His only beef is he could not go back and pick it up.

> The law enforcement officer had the ability to stop and inquire and investigate . . . whether there was a basis for that action and whether it could be remedied or whether it should be sanctioned by the civil . . . infraction. Once that stop occurs, [Respondent]'s actions create a scenario that resulted in actions by the law enforcement officer responding to [Respondent] which the law enforcement officer acted completely reasonable in protecting himself and [Respondent], frankly. Because if [Respondent] is getting into a fight on the side of the road with a law enforcement officer, there's the potential for somebody stumbling into the road and getting into a much worse injury than would ever result from a fight.

> The facts are that this law enforcement officer in looking at the facts through his eyes as stated by [Respondent] in his own deposition . . . is that the law enforcement officer had probable cause for his actions and did, in fact, act appropriately when confronted with the threat resulting from the physical altercation that was arising.

4

enforcement officer before he attempted to detain Respondent as required by section 901.17, Florida Statutes.[5] The trial court treated the motion as supplemental argument in opposition to the motions for summary judgment, and after a hearing, the court entered an order denying the motions for summary judgment. The order stated in pertinent part:

> Defendant Johnson had the right to take action to stop [Respondent] and cite him for littering. However, he was required to do so in a manner which was consistent with the law, including the requirement that he identify himself as a law enforcement officer prior to initiating a physical detention of a potential defendant. The undisputed facts do not establish that Defendant Johnson acted within those parameters, and his failure to do so may ultimately be determined to have caused damage to [Respondent].
>
> Summary Judgment is not appropriate because of the presence of disputed issues of fact which must be resolved at trial.

FWCC appealed the order to this court and Officer Johnson filed a notice of joinder in the appeal. Respondent filed a motion to dismiss the appeal in which he argued that the order was not appealable under Florida Rules of Appellate Procedure 9.130(a)(3)(C)(vii) and (xi) because the immunity claims asserted in the motions for summary judgment were not denied "as a matter of law." After considering the responses filed by FWCC and Officer Johnson, we converted the appeal to a certiorari

_____

[5] This statute provides: "A peace officer making an arrest without a warrant shall inform the person to be arrested of the officer's authority and the cause of arrest except

5

proceeding. See Fla. R. App. P. 9.040(c) ("If a party seeks an improper remedy, the case shall be treated as if the proper remedy had been sought . . . ."). FWCC and Officer Johnson thereafter filed separate petitions for writ of certiorari seeking review of the trial court's order denying their motions for summary judgment.

## II. *Analysis*

"Certiorari is the proper remedy, in limited circumstances, to review a non-final order that is not subject to appeal under Florida Rule of Appellate Procedure 9.130." AVCO Corp. v. Neff, 30 So. 3d 597, 601 (Fla. 1st DCA 2010). However, certiorari is "an extraordinary remedy and should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders." Martin-Johnson, Inc. v. Savage, 509 So. 2d 1097, 1098 (Fla. 1987).

To obtain a writ of certiorari, the petitioner must establish "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal." Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004) (quoting Bd. of Regents v. Snyder, 826 So. 2d 382, 387 (Fla. 2d DCA 2002)); see also Keck v. Eminisor, 104 So. 3d 359, 364 (Fla. 2012). The latter two elements – which are often collectively referred to as "irreparable harm" – are jurisdictional and must be considered first. See Williams v. Oken, 62 So. 3d 1129, 1132 (Fla. 2011); Elms v. Castle Constructors Co.,

_____

when the person flees or forcibly resists before the officer has an opportunity to inform

6

109 So. 3d 1274, 1275 (Fla. 1st DCA 2013); <u>Parkway Bank v. Ft. Myers Armature Works, Inc.</u>, 658 So. 2d 646, 648-49 (Fla. 2d DCA 1995).

## *A. Irreparable Harm*

The mistaken denial of a motion for summary judgment asserting qualified immunity – whether based on a determination of law or an erroneous belief that material issues of fact preclude summary judgment on the issue – results in irreparable harm because qualified immunity is an immunity from suit that is effectively lost if a case is erroneously permitted to go to trial. <u>See</u> <u>Stephens v. Geoghegan,</u> 702 So. 2d 517, 525 (Fla. 2d DCA 1997) (explaining that the gravity of a mistaken denial of immunity from suit is the same irrespective of the ground on which the denial was based); <u>see also</u> <u>Tucker v. Resha</u>, 648 So. 2d 1187, 1189 (Fla. 1994) (explaining that "an order denying qualified immunity is effectively unreviewable on appeal from a final judgment as the public official cannot be re-immunized if erroneously required to stand trial or face the other burdens of litigation") (citation and internal quotations omitted). Accordingly, because the challenged order in this case denied Officer Johnson's claim of qualified immunity, he has established the jurisdictional prerequisite of irreparable harm necessary to obtain review of the order. However, as discussed below, Officer Johnson's entitlement to relief from the order depends on whether the order departs from the essential requirements of law.

---

the person or when giving the information will imperil the arrest."

7

By contrast, any harm resulting from the erroneous denial of FWCC's motion for summary judgment is not irreparable because, by virtue of the waiver of sovereign immunity in section 768.28, Florida Statutes, FWCC has only limited immunity from the liability that may result from Respondent's suit, not immunity from the suit itself. See Dep't of Educ. v. Roe, 679 So. 2d 756, 759 (Fla. 1996) (explaining that "forcing the state to wait until a final judgment before appealing the issue of sovereign immunity does not present the same concerns that exist in the area of qualified immunity" because "although the state will have to bear the expense of continuing the litigation, the benefit of immunity from liability, should the state ultimately prevail on the sovereign immunity issue, will not be lost simply because review must wait until after final judgment"); Stephens, 702 So. 2d at 527 (dismissing certiorari petition challenging denial of immunity claim by officers sued in their official capacity because such a suit was actually a suit against the municipality that employed the officers and "[t]he material harm, irreparable on postjudgment appeal, that impelled us to exercise our certiorari jurisdiction with regard to the individual defendants . . . is simply not present in a suit against a municipality"). Absent irreparable harm, we lack certiorari jurisdiction to review the order denying FWCC's motion for summary judgment and we must dismiss its petition for writ of certiorari. See Elms, 109 So. 3d at 1276 n.* (citing Bared & Co. v. McGuire, 670 So. 2d 153, 157 (Fla. 4th DCA 1996)).

8

In reaching this conclusion, we have not overlooked the decision in O'Brien v. Esposito, 824 So. 2d 954 (Fla. 3d DCA 2002), relied on by FWCC. However, that case is distinguishable. First, the trial court in O'Brien "deferred ruling" on the defendant's immunity claim, id. at 955, whereas the trial court in this case expressly denied the motion for summary judgment in which FWCC asserted its claim of sovereign immunity. Second, the immunity claim on which the trial court deferred ruling in O'Brien was a claim of qualified immunity by an individual, id., not a claim of sovereign immunity by an agency as is the case with FWCC's claim.

## B. Departure from the Essential Requirements of Law

As the Second District explained in Stephens,

> when a public official moves for summary judgment on the ground that he or she enjoys immunity from suit arising under either state or federal law, and the record conclusively demonstrates that the public official is entitled to immunity, it is a departure from the essential requirements of law to deny it.

702 So. 2d at 525. However, "when a court denies summary judgment in the face of disputed issues of material fact, it commits no legal error, let alone a departure from the essential requirements of law." Id. at 525 n.4 ("In those instances, the denial of immunity prior to trial is unavoidable and irremediable."); see also Ondrey v. Patterson, 884 So. 2d 50, 55 (Fla. 2d DCA 2004) (denying certiorari petition because there was a genuine issue of material fact regarding correctional officer's entitlement to qualified immunity from § 1983 suit alleging a violation of prisoner's rights under the

9

Eighth Amendment); Butler v. Dowling, 750 So. 2d 674 (Fla. 4th DCA 1999) (denying certiorari petition because, under the arrestee's version of the facts, police officer was not entitled to qualified immunity from excessive use of force claim under § 1983). Accordingly, Officer Johnson's entitlement to relief in this case turns on whether the record conclusively establishes that he is entitled to qualified immunity from the false arrest and excessive use of force claims asserted by Respondent under § 1983.

A law enforcement officer is entitled to qualified immunity from a false arrest claim under § 1983 if the evidence establishes that the officer had probable cause to make the arrest. See Vermette v. Ludwig, 707 So. 2d 742, 746 (Fla. 2d DCA 1997) ("An arrest without probable cause violates the Fourth Amendment and establishes a cause of action under § 1983. On the other hand, the existence of probable cause is an absolute bar to a § 1983 claim.") (citation omitted). A law enforcement officer is entitled to qualified immunity from an excessive use of force claim under § 1983 if the evidence establishes that the officer's actions "are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Brown ex rel. Brown v. Jenne, 122 So. 3d 881, 885 (Fla. 4th DCA 2012) (quoting Graham v. Conner, 490 U.S. 386, 397 (1989)).

Here, as the trial court initially ruled (see note 4, *supra*), the material undisputed facts establish that Officer Johnson had probable cause to arrest Respondent for resisting an officer with violence because Officer Johnson was lawfully in the process

10

of attempting to detain Respondent so he could issue him a citation for littering when Respondent pushed Officer Johnson's hand away and fought with him. The fact that the criminal charges against Respondent were later dropped has no bearing on the question of whether Officer Johnson had probable cause to arrest Respondent. See Miami-Dade Cnty. v. Asad, 78 So. 3d 660, 668 (Fla. 3d DCA 2012); Fla. Game & Freshwater Fish Comm'n v. Dockery, 676 So. 2d 471, 474 (Fla. 1st DCA 1996). Accordingly, because Officer Johnson had probable cause to arrest Respondent, he was entitled to qualified immunity from the false arrest claim asserted by Respondent under § 1983, and the trial court departed from the essential requirements of law in denying his motion for summary judgment on that claim.

In reaching this conclusion, we have not overlooked the trial court's determination that there are disputed issues of fact concerning Officer Johnson's compliance with section 901.17, Florida Statutes. However, we agree with Officer Johnson that the trial court's reliance on that statute is misplaced. First, the plain language of the statute only requires the officer to identify himself as a law enforcement officer prior to making an "arrest" and, here, Officer Johnson was only attempting to detain Respondent in order to issue him a civil citation for littering when, according to Respondent, he failed to identify himself as a law enforcement officer. Second, it is undisputed that Officer Johnson identified himself as a law enforcement officer during the physical altercation that occurred prior to, and was the grounds for,

11

Respondent's arrest. Third, an officer's failure to comply with section 901.17 does not render the arrest illegal; it is merely a fact the jury can consider in the defendant's criminal case in evaluating the reasonableness of the defendant's actions. See Albury v. State, 910 So. 2d 930, 933 (Fla. 2d DCA 2005).

Unlike the false arrest claim, there are disputed issues of fact as to what precisely occurred during the physical altercation between Respondent and Officer Johnson – including when and how many times Respondent was pepper sprayed – that preclude us from determining as a matter of law that the force used by Officer Johnson in effectuating Respondent's arrest was objectively reasonable under the circumstances. For example, Respondent testified in his deposition that Officer Johnson "sucker punched" him at the outset of the altercation and that the altercation had effectively ended before he was pepper sprayed the first time, whereas Officer Johnson testified in his deposition that he did not punch Respondent and that Respondent was actively resisting arrest each time that he was pepper sprayed. Because of these factual disputes, the trial court did not depart from the essential requirements of law in denying Officer Johnson's motion for summary judgment on the excessive use of force claim under § 1983.

### III. Conclusion

For the reasons stated above, we grant Officer Johnson's petition for writ of certiorari in part and quash the trial court's order insofar as it denied his motion for

12

summary judgment on the false arrest claim under § 1983, but we deny Officer's Johnson's petition in all other respects. And, because any harm resulting from the denial of FWCC's motion for summary judgment asserting sovereign immunity can be remedied on post-judgment appeal, we dismiss FWCC's petition for writ of certiorari.

GRANTED in part; DENIED in part; DISMISSED in part.

LEWIS and MAKAR, JJ., CONCUR