964 So.2d 173 (2007)
Ophelia BROWN, Appellant,
v.
Samuel McKINNON, Appellee.
No. 3D06-1332.
District Court of Appeal of Florida, Third District.
August 1, 2007.
Rehearing Denied September 26, 2007.
Murray A. Greenberg, Miami, and Craig E. Leen & Rachel M. Wilhelm, for appellant.
Charles McKinnon, for appellee.
Before RAMIREZ, SHEPHERD, and CORTIÑAS, JJ.
PER CURIAM.
Ophelia Brown appeals the trial court's order denying her motion to dismiss, which denied her absolute and official immunity from suit in her individual capacity as a matter of law. We dismiss the appeal, as this Court has no jurisdiction to hear it. See Dep't of Educ. v. Roe, 679 So.2d 756 (Fla.1996); Fla. R.App. P. 9.130(a)(3)(C)(vii).
Appeal dismissed.
RAMIREZ and CORTIÑAS, JJ., concur.
SHEPHERD, J., dissenting.
The appellant, Ophelia Brown, director of the Miami-Dade County Community Action Agency, seeks review of a non-final order denying her motion to dismiss a complaint filed against her individually by Samuel McKinnon, the deposed Executive Director of a Community Action Agency funds recipient, St. Albans Nursery. Ms. Brown asserts in this case that the common law doctrine of absolute immunity from suit and its statutory counterpart, sovereign official immunity, shield her individually from being named a defendant in this action. Because the relief to which she claims entitlement is immunity from suit, as distinguished from immunity from liability, Ms. Brown asserts there must exist a vehicle for immediate review of the order, else the immunity afforded her under the law is illusory. Relying upon Dep't of Ed. v. Roe, 679 So.2d 756 (Fla.1996), the majority concludes that she is not entitled to immediate appellate review of this non-final order. I agree with the majority on this point. However, our labor is not thus concluded. Ms. Brown argues in the alternative that in circumstances such as these, we should treat her appeal as a petition for certiorari and grant relief. Fla. R.App. P. 9.040(c)("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought; provided that it shall not be the responsibility of the court to seek the proper remedy."); Edwards v. Edwards, 634 So.2d 284, 285 n. 1 (Fla. 4th DCA 1994)(treating a petition of certiorari as an appeal from a non-final order); Harris v. Lewis State Bank, 482 So.2d 1378, 1380-81 *174 (Fla. 1st DCA 1986)(treating an appeal from a non-final order dismissing an action with leave to amend as a petition for certiorari). Cf. Greene v. Cal. Fed. Bank, 658 So.2d 1027, 1028 (Fla. 4th DCA 1995)("If this order constituted a departure from the essential requirements of law for which there was no adequate remedy by appeal from final judgment, we would treat this appeal as a petition for certiorari. It does not, however, and we therefore dismiss the appeal."). I agree with Ms. Brown on this point. On the facts presented, I would grant, in part, the petition filed by Ms. Brown.

FACTS
This case arises out of the termination of Samuel McKinnon by his employer, St. Albans Nursery. The nursery participates in the federal Head Start program, which provides assistance to pre-school age children in economically disadvantaged communities. According to the complaint, the program is administered in Miami-Dade County by the Miami-Dade County Community Action Agency. The Agency Director, Ophelia Brown, is alleged to be the individual in charge of allocating and administering the distribution of the federal funds for the program within the County.
At the time of his termination, McKinnon was the Executive Director of St. Albans. It is not seriously disputed that St. Albans was in financial crisis. McKinnon alleges that Brown unlawfully caused St. Albans to terminate him. His complaint is supported by an attached letter from Ms. Brown on Agency stationery dated the day before his demise, stating that the Agency intended to withhold an $88,527 "second advance" necessary to pay the next day's nursery personnel salaries unless "[t]he [St. Albans] Board moves to terminate the services of the present Executive Director, Samuel McKinnon, effective immediately," and "[t]he Board cooperates fully with the Agency with the investigation of the financial status of St. Alban's by an independent auditor . . ."). He also alleges that prior to his dismissal, Brown stated to a gathering of Board members and others that McKinnon had been observed in a known drug area, had an outside job in contravention of his employment agreement with St. Albans, and was otherwise guilty of professional malfeasance. The complaint sounds in three counts, tortious interference by Brown in McKinnon's written contract with St Albans, injurious falsehood, and defamation.

ANALYSIS

I. The Jurisdictional Question
The majority declines review of the order presented on the strength of Roe, 679 So.2d 756 (Fla.1996), which treated only the question of whether an earlier decision of the Florida Supreme Court, Tucker v. Resha, 648 So.2d 1187 (Fla.1995), should be extended to "create yet another nonfinal order for which review is available (under Florida Rule of Appellate Procedure 9.130)." Roe, 679 So.2d at 759. In Tucker, inspired by the fact that an interlocutory order denying a defense of qualified immunity to a federal civil rights claim in the federal system is treated as a reviewable final order in the United States Court of Appeal if the denial turns on an issue of law, our High Court elected to amend Florida Rule of Appellate Procedure 9.130 to afford a like benefit of review to government officials in this state who find themselves in the same circumstance in our state courts. Id. at 1190. See Fla. R.App. P. 9.130(a)(3)(C)(vii). Roe acknowledges the uniqueness of Tucker. Roe, 679 So.2d at 759 ("[I]n Tucker we had an interest in affording federal causes of action brought in state court the same treatment they would receive if brought in *175 federal court."). Although in Roe, the Florida Supreme Court "approve[d] the decision of the district court of appeal [below]," Roe, 679 So.2d at 757-58, which "[had] considered DOE's petition according to the standard of review for common law certiorari and denied relief." Id. at 759, neither Roe nor Tucker appear to have expressly and directly opined on whether certiorari jurisdiction lies to review an order denying a motion to dismiss on the ground of common law or statutory immunity in the proper case. Certiorari review does exist in our court to review orders denying motions to dismiss in the proper circumstance. See, e.g., Miami-Dade County v. Fente, 949 So.2d 1101, 1102 (Fla. 3rd DCA 2007)(granting a petition for certiorari and quashing a non-final order denying petitioner's motion to dismiss on sovereign immunity grounds); Jenne v. Maranto, 825 So.2d 409, 414 (Fla. 4th DCA 2002)(treating a non-final order denying a motion to dismiss for immunity pursuant to the Eleventh Amendment as a petition for writ of certiorari). If the intention of the above affirmance is to hitch interlocutory reviewability of an order denying a public official immunity defense to federal reviewability, then I must stand athwart the evolution of appellate jurisdiction in this state yelling "stop." I have no need for a federal invitation to assert the historic original jurisdiction of this court.

II. This is a Proper Case
A writ of certiorari properly issues to the lower court from the denial of the motion to dismiss in this case if (1) the trial court departed from an essential requirement of law, (2) the order resulted in irreparable injury, and (3) the injury is incapable of being remedied by a final appeal. Blades v. State, Dept. of Revenue ex rel. Stewart, 943 So.2d 300 (Fla. 3d DCA 2006).
Ms. Brown asserts she is immune from suit in this case on the basis of both absolute immunity under the common law and its statutory counterpart, sovereign official immunity under section 768.29(9)(a)(2005). This section of the Florida statutes reads as follows:
No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
§ 768.28(9)(a), Fla. Stat. (2005). A perusal of the statute makes clear that in order for a plaintiff to succeed in piercing the statutory immunity defense, he must make a good faith allegation in the complaint that the public official either acted outside the scope of his employment or in bad faith. Id. The statute places an affirmative duty on the plaintiff to satisfy this pleading requirement. Medberry v. McCallister, 937 So.2d 808, 814 (Fla. 1st DCA 2006). This duty cannot be satisfied by mere conclusory allegations. See McClelland v. Cool, 547 So.2d 975, 977 (Fla. 2d DCA 1989). Without support, the complaint must fail.
Common law immunity provides even greater protection for public officials, shielding them from all statements made within the scope of their authority, "however false or malicious or badly motivated" the statement may be. Hauser v. Urchisin, 231 So.2d 6, 8 (Fla.1970); Albritton v. Gandy, 531 So.2d 381, 387 (Fla. 1st DCA 1988)(holding that common law immunity attaches "no matter how false or malicious *176 or badly motivated a statement may be as long as the statements or actions fall within `the scope of duty' of the public official").[1] As with statutory immunity, a plaintiff seeking to pierce a common law immunity defense has the burden of proper pleading. See Medberry, 937 So.2d at 814. To escape a motion to dismiss on the ground of common law immunity, the plaintiff has the affirmative obligation to allege the defendant acted outside the scope of her duties. See supra, p. 176 n. 1.[2] An allegation of malicious conduct will not save the complaint in the face of common law immunity protection.
Perhaps more significant for present purposes, however, is that if it attaches, both statutory immunity and common law immunity provide immunity from suit. Florida Statute 768.28(9)(a) affords both immunity from liability and immunity from suit. Willingham v. City of Orlando, 929 So.2d 43, 48 (Fla. 5th DCA 2006); Lemay v. Kondrk, 923 So.2d 1188, 1192 (Fla. 5th DCA 2006); Simon v. Murphy, 895 So.2d 1245, 1246 (Fla. 4th DCA 2005). Common law immunity also protects executive officials from both liability and suit. McNayr v. Kelly, 184 So.2d 428, 429 (Fla.1966); Stephens, 702 So.2d at 521.
Because statutory immunity and common law immunity shield officials from suit, it follows that an erroneous denial of the immunity results in irreparable injury incurable by plenary appeal. Once the official is forced to litigate, she cannot be reimmunized from suit after the fact. See Stephens, 702 So.2d at 521 ("[A]bsolute and qualified immunity for public officials are not merely defenses to liability; as the terms themselves imply, they protect a public official from having to defend a suit at all. This entitlement is lost if the defendant is required to go to trial; having been forced to defend the suit, the public official cannot be reimmunized after-the-fact.")(internal citations omitted). It makes little sense to afford a shield of immunity from suit to a public official and then fail to enforce it at the earliest moment when enforcement is appropriate. For this reason, it is a departure from the essential elements of law to fail to dismiss a complaint when it is clear on the face of the complaint that the government official is entitled to statutory or common law immunity. Alfino v. Dep't of Health & Rehabilitative *177 Services, 676 So.2d 447, 449 (Fla. 5th DCA 1996)(holding a motion to dismiss a complaint was proper when defendant was protected by government immunity).

III. Brown's Immunity Defenses
Given the breadth of the immunity shield provided to public employees under common law and statutory immunity, the trial court displayed a proper concern whether the plaintiff could ultimately state a cause of action against Ms. Brown individually. However, constrained by the obligation not to peer beyond the allegations of the complaint, see, e.g., Lopez-Infante v. Union Cent. Life Ins. Co., 809 So.2d 13, 15 (Fla. 3d DCA 2002), the court denied the motion to dismiss in its entirety. I disagree in part. I would conclude that the trial court correctly denied the motion to dismiss as to Count I, but departed from the essential requirements of law in denying the motion as to Counts II and III.
Count I of the complaint is McKinnon's tortious interference count. This count is based upon a two-fold charge: (1) that Brown called McKinnon the day before he was fired and expressed to him privately her desire to see him removed from his position; and (2) Brown's subsequent withholding of funds from St. Alban's which is alleged to have been done "outside the scope of her employment." There is no legal merit in the former allegation. The latter is based upon an attached contract between St. Albans and Head Start, which required a thirty-day notice for the withholding of any funds. Although I share the trial court's concern over whether McKinnon "[will] be able to defeat a summary judgment on this issue," I conclude that this latter allegation is facially sufficient to counter both Brown's statutory immunity defense and her common law immunity defense.
I come to a different conclusion as to Counts II and III, the claims for injurious falsehood and defamation respectively. The factual bases for these two counts are substantially identical: before McKinnon was terminated, Brown stated in the presence of St. Alban's board members and others that McKinnon was observed in a known drug area, had outside employment in contravention of his employment agreement with St. Alban's; and that he "was guilty of professional malfeasance by comingling of funds." According to the allegations of these two counts of the complaint, the remarks were "false," "Ms. Brown knew the[ ] statements were false or acted in reckless disregard of their truth or falsity" and they "were made with the intent to injure and defame Mr. McKinnon."
These allegations are sufficient to pierce the statutory immunity defense under section 768.28(9)(a) of the Florida Statutes as a matter of pleading because they plainly alleged "bad faith,[ ] malicious purpose" or "a manner exhibiting wanton and willful disregard of human rights, safety, or property" within the exceptions to this immunity statute. See § 768.28(9)(a), Fla. Stat. (2005). However, lacking any allegation that Brown acted outside the scope of her office, duties or authority when she made these statements, these allegations are insufficient to pierce the common law immunity defense. See Hauser, 231 So.2d at 8, discussed supra at p. 175-76.

CONCLUSION
Because it appears from the face of the complaint that McKinnon failed to state a cause of action for injurious falsehood or defamation, I would quash the order denying the motion to dismiss as to Counts II and III of the complaint. Brown has common law immunity from suit on these counts of the complaint and should not be forced to further defend them. However, I would deny the petition as to Count I, *178 because McKinnon properly alleged a cause of action outside the protective limits of both her statutory and common law immunity.
NOTES
[1] I pause to note that the Second District has questioned whether the doctrine of common law sovereign immunity continues to exist in light of the adoption of Florida Statute 768.28. The Penthouse Inc., v. Saba, 399 So.2d 456, 458 n. 2 (Fla. 2d DCA 1981). This district has stood with those courts of appeal in Florida that have not so opined. See Franco v. Miami-Dade County, 947 So.2d 512, 515 (Fla. 3d DCA 2006)("If the governmental actor owes a duty of care to the plaintiff, then it must be determined whether sovereign immunity bars an action for the alleged breach of that duty."); see also Stephens v. Geoghegan, 702 So.2d 517 (Fla. 2d DCA 1997)(quashing an order denying public officials' motion for summary judgment on ground of absolute immunity); Goetz v. Noble, 652 So.2d 1203 (Fla. 4th DCA 1995)(same). See also Kitchen v. K-Mart Corp., 697 So.2d 1200, 1207 (Fla.1997)("Under our rules of statutory construction, a statute will not displace the common law unless the legislature expressly indicates an intention to do so.").
[2] The language used sometimes varies slightly. See McNayr v. Kelly, 184 So.2d 428, 429 (Fla.1966)(stating that the immunity shields officials acting "within the orbit of [their] duties and responsibilities."). However, it may be stated, the purpose and intent of Florida common law immunity is to broadly shield "[all] government officials acting in connection with their official duties" Goetz, 652 So.2d at 1205. (recognizing the Supreme Court's "liberal interpretation" of the scope of the immunity in McNayr.) The intent is to ensure that complaints regarding the propriety of governmental action can be remedied without need for litigation regarding the government's middleman.