WETHERELL, J.,
dissenting.
I respectfully dissent from the panel’s decision to dismiss[1] the petition for certio-rari. I would grant the petition and quash the trial court’s order denying Petitioner’s motion for summary judgment because, in my view, the order erroneously denies Petitioner the immunity from suit that the undisputed evidence establishes that he is entitled to as a matter of law under section 768.28(9)(a), Florida Statutes (2005).
As detailed in the majority opinion, this case arises out of an accident between a city bus and a pedestrian. Respondent, the pedestrian, filed suit against the entities that owned and operated the bus, JTA and JTM. She also sued Petitioner, the bus driver, in his personal capacity. Petitioner moved for summary judgment, arguing that he was immune from this suit under section 768.28(9)(a). The trial court denied Petitioner’s motion for summary judgment on the ground that Petitioner’s employer, JTM, was not a “state agency or subdivision” under section 768.28(2) and, therefore, Petitioner was not entitled to the immunity afforded by section. 768.28(9)(a). Petitioner timely sought review of this order by filing a petition for certiorari in this court.
The Court Has Certiorari Jurisdiction to Review the Trial Court’s Order
“Certiorari is the proper remedy, in limited circumstances, to review a non-final order that is not subject to appeal under Florida Rule of Appellate Procedure 9.130.” AVCO Corp. v. Neff, 30 So.3d 597, 601 (Fla. 1st DCA 2010); see also Fla. R.App. P. 9.130(a)(1) (explaining that review of non-final orders not listed in that rule “shall be by the method prescribed in rule 9.100”). Certiorari review is available only where the challenged order 1) causes irreparable injury that cannot be remedied on plenary appeal and 2) departs from the essential requirements of law. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987). The first prong is jurisdictional and must be evaluated as a threshold matter even if, as in this case,[2] the issue was not raised by the parties. See Bared & Co., 670 So.2d at 157-58.
*1069 Section 768.28(9)(a) Provides Governmental Employees[3] Immunity from Tort Claims Alleging Only Ordinary Negligence
Section 768.28 provides a limited waiver of the state’s sovereign immunity for tort claims. § 768.28(1), Fla. Stat. The statute authorizes tort claims against the state and its agencies and subdivisions, but limits the state’s liability for such claims. § 768.28(5), Fla. Stat. The statute also provides that governmental employees acting within the scope of their employment have immunity from such claims. § 768.28(9)(a), Fla. Stat.; see also Rupp v. Bryant, 417 So.2d 658, 671 (Fla.1982) (Overton, J., specially concurring) (explaining that for actions commenced after June 30, 1980, governmental employees are “personally immune from suit for ordinary negligence in the performance of governmental employment and that the action may be maintained only against the governmental entity,” but that such immunity does not apply if the employee’s conduct was willful, wanton, or malicious).
Section 768.28(9)(a) expressly provides that governmental employees shall not be “held personally liable in tort or named as a party defendant” in any tort action alleging only ordinary negligence. The statute further provides that the “exclusive remedy” for the ordinary negligence of a governmental employee is a tort action against the governmental entity for which the employee works. Id. This language was added in 1980, see Ch. 80-271, § 1, at 1113-14, Laws of Fla., and was intended to correct erroneous judicial interpretations of the statute that culminated in District School Board of Lake County v. Talmadge, 381 So.2d 698 (Fla.1980). See Fla. H.R. Comm, on Govtl. Ops., PCB 31 (1980) Staff Analysis 1 (May 2, 1980) (available at Fla. Dep’t of State, State Archives, Tallahassee, Fla.) [hereinafter PCB 31 Staff Analysis]. Thus, in order to appreciate the nature and scope of the immunity currently provided to governmental employees, it is necessary to briefly discuss Tal-madge.
Talmadge involved a tort suit against a school board and a teacher. 381 So.2d at 699. The trial court granted the teacher’s motion to dismiss on the ground that he was immune from the suit under section 768.28(9), Florida Statutes (1975). Id. The Second District reversed, holding that the statute “acts only to indemnify an employee of the state for a monetary judgment entered against him as a result of negligent acts occurring within the scope of his employment, but does not operate as a bar against suing such an employee as a party defendant.” Id.
The supreme court began its analysis by noting that the waiver of sovereign immunity resulted in new governmental liability, and that section 768.28(9) was the Legislature’s attempt to “address[] the effect which the introduction of governmental liability has on the liability or immunity of the individual state employee.” Id. at 700 (footnote omitted). The court rejected the contention that section 768.28(9) immunized governmental employees from suit, noting that “the absence of an explicit prohibition against suing public employees for their torts suggests that none was intended.” Id. at 702. The court construed the statute “not to prevent a state officer, employee, or agent from being made a party defendant in an action under section 768.28” and not to “provid[e] public employees with immunity from suit,” but rather to “merely address[ ] the extent to *1070 which the state will be liable for their torts.” Id. at 702; see also id. at 704 (“We hold that section 768.28 merely waives the state’s preexisting immunity from suit, and that no immunity from suit for employees has been created.”).
The court summarized the range of “litigation options” available to plaintiffs based upon its interpretation of section 768.28(9). The options included suing the state and the employee jointly (whereby the state would be liable only up to the monetary limitations in section 768.28 and the employee would be personally liable for amounts exceeding the state’s liability limits); suing the state alone; or suing the employee alone. Id. at 703. The court reasoned that its interpretation of section 768.28(9) was “supported by considerations of judicial economy and public policy” and it suggested that “holding public employees personally responsible for their own negligence may provide an incentive for more careful performance of official duties and obligations.” Id. at 704.
The 1980 amendments to section 768.28(9) made clear that governmental employees are immune from tort claims unless they acted in bad faith, with malicious purpose, or in a manner exhibiting a willful and wanton disregard for human rights, safety, or property. See McGhee v. Volusia County, 679 So.2d 729, 732-33 (Fla.1996); Rupp, 417 So.2d at 661 n. 6; id. at 671 (Overton J., specially concurring). The legislative staff analysis for the 1980 amendments explained that amendments to section 768.28 adopted in 1979 sought to prevent personal liability of governmental employees,[4] but that in light of the supreme court’s opinion in Talmadge, “there is some concern ... that the 1979 legislation does not in fact achieve the results intended, to wit: no personal liability for employees acting within the scope of their employment.” PCB 31 Staff Analysis, at 1; hut cf. Rice v. Lee, 477 So.2d 1009, 1011 (Fla. 1st DCA 1985) (suggesting that the 1979 amendments to section 768.28(9) eliminated the inconsistency in the statute that was the basis for the court’s decision in Talmadge), rev. denied, 484 So.2d 9 (Fla.1986).
In light of the Legislature’s express rejection of the result reached in Talmadge through the 1980 amendments to section 768.28, it is now clear that governmental employees are immune from tort suits alleging only ordinary negligence. Indeed, the statute now expressly provides that the employee is not even to be named as a party defendant in such a suit, such that the only “litigation option” from Talmadge that is still available for plaintiffs in tort cases involving only ordinary negligence by governmental employees is to sue the governmental entity for which the employee works under the principle of respondeat superior. See McGhee, 679 So.2d at 732-33 (explaining that the 1980 amendments to section 768.28(9) abrogated Talmadge insofar as it held that governmental employees could be sued in tort for conduct that fell within the scope of their employment); and cf. Holmes County Sch. Bd. v. Duffell, 651 So.2d 1176, 1178 (Fla.1995) (recognizing in the context of a suit by a governmental employee against a co-worker that section 768.28(9)(a) “immunizes public employees from personal liability for torts by requiring any civil action for the employee’s negligence to be maintained against the governmental entity”).
*1071 The majority does not appear to dispute the proposition that governmental employees are immune from tort suits alleging only ordinary negligence. However, as discussed below, the effect of the majority’s decision is to undermine that immunity by precluding interlocutory review of an order that erroneously denied a governmental employee’s claim of immunity. Moreover, by allowing this case to proceed against Petitioner as a named defendant, the majority is effectively sanctioning a “litigation option” that, as recognized by the supreme court in McGhee, is no longer proper after the amendments to section 768.28 adopted in response to Talmadge.
The Trial Court’s Order Denying Petitioner Immunity from this Suit Causes Irreparable Harm that Cannot be Remedied on Plenary Appeal
The fact that the section 768.28(9)(a) not only grants immunity from liability, but also immunity from suit, provides the basis for the exercise of our certiorari jurisdiction. As I recently observed in a dissent in another case:
The denial of immunity from suit has been held to be sufficient irreparable injury to justify certiorari review. See, e.g., Seminole Tribe of Fla. v. McCor, 903 So.2d 358, 357-58 (Fla. 2d DCA 2005) (tribal immunity); Jenne v. Maranto, 825 So.2d 409, 415 (Fla. 4th DCA 2002) (Eleventh Amendment immunity); Stephens v. Geoghegan, 702 So.2d 517, 521 (Fla. 2d DCA 1997) (qualified immunity). As our supreme court explained in the context of qualified immunity— which, like the immunity at issue in this case, is immunity from suit rather than a defense to liability — the entitlement to immunity is “effectively lost if a case is erroneously permitted to go to trial” because the party entitled to the immunity cannot be “ ‘re-immunized’ if erroneously required to stand trial or face the other burdens of litigation.” Tucker, 648 So.2d at 1189 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Moreover, as recently observed by Judge Shepherd, “[i]t makes little sense to afford a shield of immunity from suit ... and then fail to enforce it at the earliest moment when enforcement is appropriate.” Brown v. McKinnon, 964 So.2d 173, 176 (Fla. 3d DCA 2007) (Shepherd, J., dissenting).
Citizens Prop. Ins. Corp. v. San Perdido Ass’n, 46 So.3d 1051, 1055, 2010 WL 3894497 (Fla. 1st DCA 2010) (Wetherell, J., dissenting). Accord Lemay v. Kondrk, 923 So.2d 1188, 1192 (Fla. 5th DCA 2006) (“[T]he immunity provided by section 768.28(9)(a) is both an immunity from suit and an immunity from liability and we recognize that an entitlement is effectively lost if the case is erroneously permitted to go to trial.”); cf. Dep’t of Health & Rehab. Servs. v. Miller, 413 So.2d 96 (Fla. 1st DCA 1982) (stating that “[t]his court has entertained petitions for writs of certiorari to review interlocutory orders determining issues of sovereign immunity,” but declining to issue the writ in that case because there were disputed issues of fact bearing on the immunity issue); Metropolitan Dade County v. Kelly, 348 So.2d 49, 50 (Fla. 1st DCA 1977) (treating interlocutory appeal of order denying county bus driver’s motion to dismiss pursuant to section 768.28(9) as a petition for certiorari and reversing because the complaint did not allege that the driver acted in bad faith).
Nothing in Tucker compels the result reached by the majority. The supreme court held in that case that “an order denying summary judgment based upon a claim of qualified immunity is subject to interlocutory review to the extent that the order turns on an issue of law.” 648 So.2d at 1190. In reaching that decision, the *1072 court observed that qualified immunity involves “ ‘immunity from suit rather than a mere defense to liability.’” Id. at 1189 (quoting Mitchell, 472 U.S. at 526, 105 S.Ct. 2806) (emphasis in original). And the court also recognized that an order denying qualified immunity “ ‘is effectively unreviewable on appeal from a final judgment’ ... as the public official cannot be ‘re-immunized’ if erroneously required to stand trial or face the other burdens of litigation.” Id. (citations omitted). The same rationale applies in this case.
Unlike the majority, I do not find significant the fact that Tucker involved a § 1988 claim against an agency head and this case merely involves a tort claim against a bus driver. The same general policy considerations underlying qualified immunity also underlie the immunity provided to governmental employees in section 768.28(9)(a). As is the case with the denial of qualified immunity, society as a whole will pay the “social costs” of the erroneous denial of immunity to governmental employees, including the expenses of litigation, diversion of the employee’s energy from public business, and the deterrence of able-bodied citizens from accepting public employment. Tucker, 648 So.2d at 1190. Although these costs may be different in degree between public officials and rank-and-file governmental employees, they are not different in kind.
I recognize that subsequent to Tucker, the supreme court held that the denial of a motion to dismiss on sovereign immunity grounds was not immediately appealable. Dep’t of Educ. v. Roe, 679 So.2d 756 (Fla.1996). The court reasoned that an agency’s claim of sovereign immunity does not present the same concerns that exist in the area of qualified immunity because 1) “public officials who defend tort suits against the state are not sued in their personal capacities” and 2) “although the state will have to bear the expense of continuing the litigation, the benefit of immunity from liability, should the state ultimately prevail on the sovereign immunity issue, will not be lost simply because review must wait until after final judgment.” Id. at 759.
Roe does not provide support for the majority’s decision in this case. First, Roe is distinguishable because it involved a suit against a state agency, not a governmental employee. Id. at 757. Second, and more importantly, the concerns that the supreme court found not implicated by the denial of an agency’s sovereign immunity are implicated by the denial of a governmental employee’s claim of immunity under section 768.28(9)(a). In this case, for example, Petitioner was sued in his personal capacity, and his immunity from suit will be lost if review of the trial court’s order denying his motion for summary judgment is deferred until after final judgment. Accordingly, the analysis in Roe supports my view that we have certiorari jurisdiction to review the trial court’s order in this case.
I also recognize that, after Tucker, the supreme court adopted rule 9.130(a)(8)(C)(vii), which authorizes interlocutory appeals of non-final orders “that, as a matter of law, a party is not entitled to absolute or qualified immunity in a civil rights claim arising under federal law.” See Amend, to Fla. Rules of Appellate Proc., 696 So.2d 1108, 1127, 1129 (Fla.1996). Although there is no corresponding rule authorizing interlocutory appeals of non-final orders denying claims of sovereign immunity under section 768.28, that does not mean that such orders may not be reviewed by certiorari in the appropriate case. See Stephens, 702 So.2d at 520-21 (explaining that the court’s jurisdictional analysis of a non-final order does not end with rule 9.130 because the court has *1073 jurisdiction to review certain non-final orders by certiorari); see also Brown v. McKinnon, 964 So.2d 173, 174-76 (Fla. 3d DCA 2007) (Shepherd, J., dissenting), rev. denied, 980 So.2d 488 (Fla.2008); Fla. R.App. P. 9.130(a)(1).
I do not read the Stephens case relied upon by the majority to stand for the proposition that certiorari is not available in appropriate circumstances to review orders denying claims of immunity under section 768.28(9)(a). In fact, I read it to stand for precisely the opposite proposition because the court in Stephens reviewed the trial court’s order denying the individual defendants’ claims of absolute immunity from state tort claims by certiorari and quashed the order. See 702 So.2d at 521. Moreover, the court broadly held that:
when a public official moves for summary judgment on the ground that he or she enjoys immunity from suit arising under either state or federal law, and the record conclusively demonstrates that the public official is entitled to immunity, it is a departure from the essential requirements of law to deny it.[FN] [FN] We emphasize that our holding is applicable only to cases where the public official is seeking immunity from suit. Our holding is not applicable to an official seeking immunity from liability. Cf. Roe, 679 So.2d at 759 (refusing to expand interlocutory appeal right established in Tucker II, 648 So.2d 1187, to order denying sovereign immunity; sovereign immunity is an immunity from liability and its benefits will not be lost simply because review must wait until after judgment).
Id. at 525 (emphasis in original).
Stephens involved a suit filed by a police officer, Geoghegan, against the City of St. Petersburg and three other city police officers arising out of Geoghegan’s termination from the police force. Id. at 520. The officer defendants moved for summary judgment, arguing that they had qualified immunity from the § 1983 claims in the suit and absolute immunity from the tort claims in the suit. Id. The trial court denied the motions. Id. The Second District treated the appeal as a petition for certiorari and quashed the trial court’s order insofar as it denied the officer defendants’ claims of immunity “in their individual capacities.” Id.
The majority focuses on the fact that the Second District declined to review the trial court’s denial of the motion for summary judgment as to the claims against the defendants in their official capacities. That is irrelevant to the issue before us because Petitioner was sued in his personal capacity. Indeed, this distinction was expressly recognized in Stephens where the court explained:
The material harm, irreparable on post-judgment appeal, that impelled us to exercise our certiorari jurisdiction with regard to the individual defendants, that is, denial of immunity from defending a suit, with its attendant expenses, diversion of official energy and deterrence of able citizens from pursuing public employment, is simply not present in a suit against a municipality.
Id. at 527.
Moreover, subsequent to Stephens, the Second District has reviewed the denial of a governmental employee’s claim of immunity under section 768.28(9)(a) by certiora-ri. See Ondrey v. Patterson, 884 So.2d 50 (Fla. 2d DCA 2004). Although the court determined that the trial court in that case did not depart from the essential requirements of law in denying the employee’s motion for summary judgment because there were disputed issues of fact concerning the employee’s entitlement to immunity under the statute, the fact that the court accepted jurisdiction to consider the *1074 issue shows that Stephens does not stand for the bright-line rule inferred by the majority. See also Smith v. Rankin, 950 So.2d 1278, 1279 (Fla. 2d DCA 2007) (La-Rose, J., concurring).
I recognize that in Brown v. McKinnon, the Third District refused to review an order denying a governmental employee’s motion to dismiss based upon her claim of immunity under section 768.28(9)(a). See 964 So.2d at 173. However, that case is distinguishable because it involved an appeal, not a petition for certiorari. Id. Moreover, I find the analysis in Judge Shepherd’s dissent more persuasive than the per curiam majority opinion because he recognized that the erroneous denial of immunity from suit results in irreparable harm that cannot be remedied on plenary appeal, and that even if the order was not appealable, it is reviewable by certiorari. Id. at 176 (Shepherd, J., dissenting).
In sum, I would conclude that we have certiorari jurisdiction to review the trial court’s order denying Petitioner’s motion for summary judgment because the order denies his claim of immunity from Respondent’s suit, and in so doing, causes irreparable harm to Petitioner that cannot be remedied on plenary appeal.
The Trial Court’s Order Departs From the Essential Requirements of Law Because the Undisputed Evidence Establishes that Petitioner is an Employee of a “State Agency or Subdivision” and, Therefore, He is Entitled to Immunity from This Suit Under Section 768.28(9)(a)
In my view, not only do we have certio-rari jurisdiction to review the trial court’s order, but it is incumbent upon us to exercise that jurisdiction and quash the order because the record conclusively establishes that Petitioner is entitled to immunity from this suit and, thus, the trial court departed from the essential requirements of law in denying Petitioner the immunity that he is entitled. See Bd. of Regents v. Snyder, 826 So.2d 382, 387 (Fla. 2d DCA 2002) (“[Wjhen the record conclusively demonstrates entitlement to immunity, it is a departure from the essential requirements of law for a trial court to deny a motion for summary judgment on that basis.”).
It is undisputed that Petitioner was acting within the scope of his employment with JTM at the time of the accident that injured Respondent, and it is also undisputed that the accident was caused by Petitioner’s alleged ordinary negligence, not bad faith, maliciousness, or willful and wanton conduct. Thus, Petitioner is entitled to immunity from Respondent’s suit under section 768.28(9)(a) as a matter of law if his employer, JTM, is a “state agency or subdivision” for purposes of section 768.28. The material facts necessary to determine that issue are also undisputed and, thus, our review of the trial court’s order is de novo.
Section 768.28(2) defines “state agencies or subdivisions” to include “independent establishments of the state” as well as “corporations primarily acting as in-strumentalities or agencies of the state, counties, or municipalities.” The critical factor in determining whether a private corporation is an instrumentality of the state for sovereign immunity purposes is the level of governmental control over the performance and day-to-day operations of the corporation. See Prison Rehabilitative Indus. & Diversified Enters., Inc. v. Betterson, 648 So.2d 778 (Fla. 1st DCA 1994) [hereinafter “PRIDE ”]; Shands Teaching Hosp. & Clinics, Inc. v. Lee, 478 So.2d 77, 79 (Fla. 1st DCA 1985).
Respondent does not dispute that JTM was an instrumentality of JTA, and the *1075 undisputed evidence of record[5] establishes that JTA exercised sufficient control over JTM for JTM to be considered an instrumentality of JTA. Rather, Respondent contends that JTA is an “independent establishment of the state” and that the definition of “state agencies or subdivisions” in section 768.28(2) only encompasses corporations acting as instrumentalities of “the state, counties or municipalities,” and not corporations acting as instrumentalities of “independent establishments of the state.”
The trial court agreed with Respondent that section 768.28(2) did not encompass corporations acting as instrumentalities of “independent establishments of the state,” such as JTA. Accordingly, the trial court concluded that JTM was not a “state agency or subdivision” for sovereign immunity purposes and, therefore, Petitioner was not entitled to the immunity in section 768.28(9)(a). The trial court noted that its conclusion was supported by the fact that JTM was specifically created as a private entity in' order to give its employees the right to strike and by the fact that JTA did not have the statutory authority to form JTM until 2009, which is after the accident giving rise to this case.
The hyper-technical interpretation of section 768.28(2) adopted by the trial court is inconsistent with the principal that section 768.28 should be construed in favor of the state because sovereign immunity is the rule, rather than the exception. See generally Am. Home Assurance Co. v. Nat’l R.R. Passenger Corp., 908 So.2d 459, 471-72 (Fla.2005); Pan-Am Tobacco Corp. v. Dep’t of Corr., 471 So.2d 4, 5 (Fla.1984); Windham v. Fla. Dep’t of Transp., 476 So.2d 735, 739 (Fla. 1st DCA 1985). The trial court’s conclusion that section 768.28(2) does not encompass corporations acting as instrumentalities of “independent establishments of the state” is also inconsistent with cases such as Pagan v. Sarasota County Public Hospital Board[6] in which the Second District held that a corporation acting as an instrumentality of a hospital district, an independent establishment of the state, is entitled to sovereign immunity and PRIDE in which this court held that a corporation acting as an instrumentality of a state agency — the Department of Corrections — was entitled to sovereign immunity. See also Stoll v. Noel, 694 So.2d 701 (Fla.1997) (holding that physicians who contracted with the state to work as consultants for a state health care facility were state agents and entitled to sovereign immunity); Op. Att’y Gen. Fla. 2006-36 (2006) (opining that a not-for-profit corporation created by an independent special district was entitled to sovereign immunity because the district was the sole member of the corporation, funded the corporation, and transferred governmental functions to the corporation); Op. Att’y Gen. Fla. 2005-24 (2005) (opining that the *1076 not-for-profit corporation formed by a hospital district was subject to the sovereign immunity provisions of section 768.28 where the hospital district was the sole member of the corporation, managed the operation of the corporation, and transferred governmental functions to the corporation by a lease agreement); Op. Att’y Gen. Fla. 99-05 (1999) (opining that a nongovernmental transportation coordinator was acting as an instrumentality of the state where the exercise of its legislatively granted powers and duties was subject to the oversight of a local agency). Thus, regardless of whether JTA is considered to be an “independent establishment of the state” (as found by the trial court) or an “agency of the state” (as provided in section 849.03(1), Florida Statutes), I would conclude that JTM is entitled to sovereign immunity as a corporation primarily acting as an instrumentality of JTA.
Unlike the trial court, I do not discern any inherent contradiction between the determination that JTM employees are entitled to sovereign immunity and their apparent right to strike notwithstanding the statutory and constitutional prohibition against strikes by public employees. The criteria for determining whether an entity is a public employer for labor relations purposes are different than those used to determine whether a private entity is primarily acting on behalf of a public agency for purposes of sovereign immunity. Compare § 447.203(2), Fla. Stat. (definition of “public employer” for labor relations purposes) with § 768.28(2), Fla. Stat. (defining “state agencies or subdivisions” for purposes of sovereign immunity).
I also find no significance in the fact that JTA’s enabling statute was amended in 2009 to specifically authorize the JTA to “form ... public benefits corporations to carry out [its] powers and obligations.” See ch. 2009-111, § 3, at 1480, Laws of Fla. (amending section 349.04(2)(s)). As was the case with the corporation at issue in PRIDE, JTM was in existence long before the statutory amendment purportedly authorizing its formation. Thus, as was the case in PRIDE, it is reasonable to assume that the amendment to section 349.04 was simply intended to clarify JTA’s existing authority to have formed JTM. See 648 So.2d at 779-80 (concluding that the statutory amendment to PRIDE’s enabling statute that deemed it to be an instrumentality of the state entitled to sovereign immunity merely clarified PRIDE’s existing status).
In sum, I would conclude that the trial court erred in determining that JTM is not a state agency or subdivision under section 768.28(2) and, thus, the trial court departed from the essential requirements of law in denying Petitioner’s claim of immunity under section 768.28(9)(a). Accordingly, I would quash the trial court’s order denying Petitioner’s motion for summary judgment and, consistent with Stephens, “remand for trial court to enter summary judgment on the immunity issues in [Peti-tionerj’s favor.” See 702 So.2d at 527.
Conclusion
The effect of the trial court’s order is to require Petitioner to litigate a suit from which he is immune. The effect of the majority’s decision not to review the order by certiorari at this time is to eviscerate the immunity provided to Petitioner by section 768.28(9)(a). Requiring Petitioner to wait until the end of the litigation to obtain review of the trial court’s erroneous ruling on his motion for summary judgment is, in my view, simply wrong as a matter of law and also fails to give effect to the clear public policy embodied in section 768.28(9)(a).
The impact of the majority’s decision extends well beyond Petitioner and other employees of JTM. The decision will ap *1077 ply to all governmental employees — e.g., police officers, firefighters, prison guards, child welfare workers, teachers and school administrators, etc. — who are sued in their personal capacity for an alleged tort based upon ordinary negligence and are denied immunity under section 768.28(9)(a) by the trial court. At least in this district, such employees will be unable to obtain review of the denial of their claim of immunity until after an adverse final judgment, which defeats the purpose of the immunity provided by the statute. Thus, although I disagree with the majority’s disposition of this case, I agree that the question framed by the majority is of great public importance and should be resolved by the supreme court.

. Although the majority states that it is denying the petition, I construe the decision as a dismissal of the petition for lack of jurisdiction because the decision appears to be based upon jurisdictional concerns rather than a determination that the trial court’s order comports with the essential requirements of law. See Bared & Co., Inc. v. McGuire, 670 So.2d 153, 157 (Fla. 4th DCA 1996) (en banc) (explaining that the dismissal of a petition for certiorari reflects a determination that the court lacks jurisdiction because the petitioner failed to present a prima facie showing of irreparable harm, whereas the denial of a petition reflects a determination that the order is not a departure from the essential requirements of law).

. In her response to the petition, Respondent "agree[d] that the order denying [Petitioner]'s motion for summary judgment is reviewable by petition for common law certiorari.”

. I use the phrase "governmental employees” as a shorthand reference for those persons subject to the provisions of section 768.28(9)(a) — i.e., "officer[s], employee[s], or agentfs] of the state or any of its subdivisions.”

. The 1979 amendments deleted the second sentence of section 768.28(9), which provided that "[sjubject to the monetary limitations set forth in subsection (5), the state shall pay any monetary judgment which is rendered in a civil action personally against an officer, employee, or agent of the state which arises as a result of any act, event, or omission of action within the scope of his employment or function.” Ch. 79-139, § 9, at 517, Laws of Fla.

. The affidavit, depositions, and other evidence submitted by Petitioner in support of his motion established that JTM was a private corporation created in 1991 under the auspices of JTA to serve as the non-public employer of record to accommodate bus drivers and mechanics who wanted to retain their right to strike and maintain a private pension plan; that JTM was entirely encompassed within JTA and had no business activity outside of providing services for JTA; that JTA was responsible for the entire management and operation of the transit system operated by JTM; that JTA established the routes that JTM drivers would drive, provided all facilities to JTM, provided the buses for JTM drivers to drive, and paid all of JTM’s costs of operation; that JTM did not have any independent control over funding or purchasing; that JTA employees directly supervised JTM drivers; and that JTA maintained strict control over the employment conditions of JTM employees, including hiring and firing JTM employees.

. 884 So.2d 257 (Fla. 2d DCA 2004), rev. denied, 894 So.2d 971 (Fla.2005).