ROTHENBERG, J.
 

 Key Largo Ocean Resort Co-Op, Inc. (“KLOR”) seeks a writ of certiorari quashing a non-final trial court order entered on KLOR’s petition for declaratory judgment. The trial court found that the proposed site plan at issue in this case cannot be approved without the votes of 100% of KLOR’s shareholders, as provided by section 719.1055(1), Florida Statutes (2008). We grant the petition and quash the order entered below.
 

 KLOR is a corporation formed in 1980. The corporation owns real estate in Key Largo, which is divided into some 285 campsites. Each campsite was sold under a lease agreement providing the owner-lessee (“unit owner”) with one share in the corporation. The campsite boundaries have not been surveyed, and no legal boundaries have been described. The property was originally zoned as a Recreational Vehicle District where permanent structures were not allowed.
 

 By 1994, the character of the campground had changed. Many of the residents built permanent structures, which did not comply with Monroe County’s zoning restrictions. In 1994, Monroe County began code enforcement proceedings against KLOR because the names of the individual unit owners were not available
 
 *33
 
 in the public records. The County secured a lien against KLOR.
 

 In 1996, because KLOR failed to pay its debt and cure its non-compliance, Monroe County sought to foreclose upon the lien. KLOR requested, and was granted, time to seek rezoning (to Urban Residential Mobile Home) and to cure the code violations. In 2003, a court-ordered mediation between KLOR and Monroe County resulted in the execution of a settlement agreement requiring Monroe County and KLOR to work together to bring the property into compliance. Negotiations resulted in a 2006 Development Agreement.
 

 The final Development Agreement required the approval of a proposed site plan, which involves changes to the size and configuration of certain cooperative units, including the widening of roads to allow for improved emergency vehicle access, the removal of non-compliant structures, and a change in the location of certain common areas. Some of the residents (collectively, “the Intervenors”) felt that these proposed changes unfairly affected their interests. Accordingly, they moved to intervene, arguing in part, that the proposed site plan could not be approved without 100% voter approval, as provided by section 719.1055(1).
 

 KLOR then brought the instant action for declaratory judgment, arguing that the proposed site plan required only 51% approval by the shareholder/residents, as indicated in KLOR’s Articles of Incorporation and Bylaws. The Intervenors argued that 100% approval by the shareholders was required. The trial court found that: (1) KLOR is a statutory cooperative, generally subject to Florida law as provided in chapter 719; and (2) approval of the proposed site plan required the votes of 100% of the shareholders, pursuant to section 719.1055(1). On October 12, 2008, 69.4% of KLOR’s shareholders voted to approve the proposed site plan, and this petition followed.
 
 [1]
 

 STANDARD OF REVIEW
 

 “It is well settled that to obtain a writ of certiorari, there must exist ‘(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.’ ”
 
 Reeves v. Fleetwood Homes of Fla., Inc.,
 
 889 So.2d 812, 822 (Fla.2004) (quoting
 
 Bd. of Regents v. Snyder,
 
 826 So.2d 382, 387 (Fla. 2d DCA 2002)).
 

 KLOR’S STATUS AS A COOPERATIVE
 

 As an initial matter, this Court must determine whether the trial court properly found that KLOR was a statutory cooperative, to which the provisions of chapter 719, Florida Statutes, are applicable. Because KLOR exists and operates as a cooperative, as defined by Florida law, this Court finds no reason to disturb the trial court’s finding that, as a general matter, KLOR is subject to chapter 719.
 

 Under Florida law:
 

 “Cooperative” means that form of ownership of real property wherein legal title is vested in a corporation or other entity and the beneficial use is evidenced by an ownership interest in the association and a lease or other muniment of title or possession granted by the association as the owner of all the cooperative property.
 

 
 *34
 
 § 719.103(12), Fla. Stat. (2008). According to this definition, there is no doubt that the form of ownership vested in the unit owners at KLOR — who purchased a leasehold interest in a unit which entitles them to a share in the corporation — is best described as a cooperative. In addition, KLOR’s Bylaws expressly provide that all Florida laws “regulating the internal administration and operation of this Cooperative Campground shall be considered incorporated by reference herein and shall control in case of any conflict with these ByLaws.” (emphasis added).
 

 Because the day-to-day operation of KLOR fits the statutory definition of a cooperative, and because KLOR’s Bylaws describe KLOR as a cooperative and expressly adopt the statutory scheme, the trial court correctly deemed KLOR generally subject to chapter 719.
 

 In response, KLOR argues that it cannot be deemed a statutory cooperative because it failed to comply with certain technical provisions contained in Florida’s cooperative statute.
 
 See
 
 § 719.1035(1), Fla. Stat. (2008) (providing that the cooperative’s documents “must be recorded in the county in which the cooperative is located”); § 719.105(l)(a), Fla. Stat. (2008) (requiring that a legal description of each unit “must be recorded in the office of the clerk of the circuit court”). Although it is not necessary to this Court’s determination of KLOR’s status, we reject KLOR’s argument, in part, because the doctrine of equitable estoppel likely bars KLOR from improving its legal position based upon KLOR’s own failure to comply with the law.
 
 See generally Major League Baseball v. Morsani,
 
 790 So.2d 1071, 1076-77 (Fla.2001) (discussing equitable estoppel and stating that the doctrine bars the wrongdoer from asserting a shortcoming directly attributable to the wrongdoer’s misconduct and profiting from his or her own misconduct).
 

 THE SPECIFIC APPLICATION OF SECTION 719.1055
 

 Because this Court agrees with the trial court’s finding that, as a general matter, KLOR is subject to the provisions of chapter 719, the instant petition turns solely upon whether the trial court departed from the essential requirements of the law when it found the 100% shareholder approval requirement of section 719.1055, specifically applicable to the proposed site plan vote.
 

 Section 719.1055(1) provides that amendments to a cooperative’s Bylaws affecting the size or configuration of a cooperative unit may require the approval of the affected shareholder, all lien holders, and the record owners of all other units. However, and critically, this 100% approval requirement is only triggered where the cooperative’s original documents are silent as to an amendment enacting such a change.
 
 See
 
 § 719.1055(1)
 
 (“Unless otherwise provided in the original cooperative documents,
 
 no amendment thereto may change the configuration or size of any cooperative unit in any material fashion ....”) (emphasis added).
 

 In this case, both the Articles of Incorporation and the duly enacted Bylaws provide for a complete procedure applicable to proposed amendments like those which will be imposed by adoption of the proposed site plan. And those documents provide that if 75% of the Board of Directors and 51% of unit owners approve, then the amendment passes.
 
 [2]
 
 Therefore, according to the above-emphasized lan
 
 *35
 
 guage at the outset of section 719.1055, subsection (1), the 100% approval requirement in the statute does not apply, and the trial court’s specific application of the statute was a departure from the essential requirements of the law.
 

 Allowing this departure from the law to stand would, in effect: (1) invalidate the proper KLOR unit-owner vote held on October 12, 2008; (2) invalidate the final settlement agreement reached after years of exhaustive negotiations; and (3) force Monroe County to compel resolution of the health and safety issues at KLOR, which would likely involve the re-institution of the lien foreclosure proceedings. Such harm is material, certain to last for the duration of the case, and cannot be corrected on postjudgment appeal. Thus, we grant KLOR’s petition for writ of certiora-ri and quash the order entered by the trial court.
 

 Petition granted; order quashed.
 

 [1]
 

 . Monroe County is only tangentially involved in the instant petition. As discussed by the trial court, Monroe County has a strong interest in resolving the health and safety issues on the KLOR property, but eventually, the patience demonstrated by Monroe County so far, will and should run out.
 

 [2]
 

 . On October 12, 2008, 100% of KLOR’s Board and 69.4% of the unit-owners voted to approve the proposed site plan.