# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2808

_____

STATE OF FLORIDA,

Petitioner,

v.

DWAYNE BOATMAN,

Respondent.

_____

Petition for Writ of Certiorari—Original Jurisdiction.


July 9, 2019


ROWE, J.

The State seeks a writ of certiorari to quash an order prohibiting the use of hearsay statements by the child victim in the prosecution of Dwayne Boatman for capital sexual battery and lewd or lascivious molestation. In determining that the child's statements were too unreliable to be admitted into evidence, the trial court made findings and reached legal conclusions based on facts not presented at the evidentiary hearing and unsupported by the record. This was a departure from the essential requirements of law and caused irreparable harm.

## *Facts*

Boatman's nine-year-old stepdaughter, K.S., reported to officials at her elementary school that Boatman "had sex" with her.

She also stated that Boatman "raped" her the very morning she made the report. K.S. was referred to a child protection team, who then performed a recorded forensic interview. During the interview, K.S. repeated that Boatman "raped" her. When asked what she meant by that term, K.S. said that it meant that he "had sex with her" and explained that Boatman had penetrated her anus with his penis.

A sexual assault examination was conducted the same day. A nurse practitioner swabbed K.S.'s anal area to test for DNA. The test results revealed that the DNA retrieved from the anal swabs matched Boatman's DNA. Based on the evidence obtained from the forensic interview and the sexual assault examination, the State charged Boatman with sexual battery and lewd and lascivious molestation.

Before the State could go to trial, K.S. recanted. In a four-minute deposition taken by Boatman's attorney two years after the alleged rape and K.S.'s reports to school officials, K.S. denied that Boatman raped her. When asked by defense counsel if she knew what the term "rape" meant, K.S. responded, "I know what it means now, but I didn't know what it means then." She refused to explain her current understanding of the word. When asked if Boatman had ever put his private part to her private part, K.S. responded, "No. Not that I'm referring of, no." K.S. stated that she loved Boatman more than her real father and that Boatman would not be in prison were it not for her earlier statements. The State asked K.S. on cross-examination whether she would do anything to protect her family. K.S. responded affirmatively, "I don't care how I do it, shoot to kill." No further questions were asked, and the deposition concluded.

After the deposition, the State moved under section 90.803(23), Florida Statutes (2018), to introduce the child hearsay statements K.S. made in her recorded CPT interview and the hearsay statements she made to the two school officials, the nurse who performed the sexual assault examination, and the CPT member who conducted the interview. The court conducted an evidentiary hearing and after considering testimony and information obtained during discovery, determined that K.S.'s

2

statements were unreliable.  Included in the order were findings regarding DNA evidence:

> The evidence provided by the State in the course of discovery indicates that the DNA from the swabs taken from K.S.'s anal and vaginal areas matched the Defendant's DNA.  One reasonable hypothesis of innocence to explain the presence of such DNA may be that the Defendant and his wife had sexual intercourse; the wife (K.S.'s mother); the wife used the "community" dirty, green rag to "wipe up" after this marital activity; and K.S. used this same dirty, green rag to "wipe up" to retaliate against her stepfather for not giving her the attention she sought.

The court also found that K.S.'s conduct may "fall under the description of a child with feminine Oedipal complex (Electra complex)."  The court excluded the hearsay statements based on its determination that the statements were unreliable.

*Analysis*

The State seeks certiorari review of the court's order prohibiting K.S.'s hearsay statements from being used to prosecute Boatman.  *See State v. Pettis*, 520 So. 2d 250, 253 (Fla. 1988) (holding that the State may seek certiorari review of nonfinal pretrial orders in a criminal case).  Before certiorari relief may be granted, we must find that the order is "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal." *Reeves v. Fleetwood Homes of Fla., Inc.*, 889 So. 2d 812, 822 (Fla. 2004) (quoting *Bd. of Regents v. Snyder*, 826 So. 2d 382, 387 (Fla. 2d DCA 2002)).

We first consider whether the State will suffer a material injury that cannot be corrected on appeal. *Segura v. State*, 44 Fla. L. Weekly D1210a (Fla. 1st DCA May 6, 2019).  When a pretrial order significantly impairs the State's ability to prosecute by excluding critical evidence, the harm is irreparable because the State cannot appeal if the defendant is acquitted. *Pettis*, 520 So. 2d at 253; *See* Fla. R. App. P. 9.140(c)(1) (listing the orders the

State may appeal in criminal proceedings). Here, the State's prosecution of Boatman will be seriously, if not entirely, impeded if K.S.'s hearsay statements are excluded. *State v. Thomas*, 207 So. 3d 928, 932-33 (Fla. 1st DCA 2016).

Because the State has established irreparable harm, we must next determine whether the order departs from the essential requirements of the law. This requires the State to show "more than a simple legal error." *Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 889 (Fla. 2003). Rather, the State must show "an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice." *Jones v. State*, 477 So. 2d 566, 569 (Fla. 1985).

The order under review excludes the use of hearsay statements by K.S. in the prosecution of Boatman. *See* § 90.803(23), Fla. Stat. (2018) (allowing as an exception to the hearsay rule, the admission of a statement of a child victim of sexual abuse when certain conditions have been met.) Before permitting statements of a child victim to be admitted into evidence, the trial court must find that "the source of the information through which the statement is reported is trustworthy." *State v. Townsend*, 635 So. 2d 949, 954 (Fla. 1994). Further, the court must find that "the time, content, and circumstances of the statement must reflect that the statement provides sufficient safeguards of reliability." *Id.* Here, the court found that each source was trustworthy. But the court concluded there were "not sufficient safeguards of reliability with respect to K.S.'s statements." The State argues that in reaching this conclusion, the trial court relied on facts and theories unsupported by the record. The State argues that this was a departure from the essential requirements of law. *See State v. White*, 152 So. 3d 633, 635 (Fla. 4th DCA 2014).

The State first points to the court's findings regarding the presence of Boatman's DNA on swabs taken from K.S.'s anal region. The court offered a "reasonable hypothesis of innocence"[1]

---

[1] The "reasonable hypothesis of innocence" standard is used when a defendant moves for judgment of acquittal, and the

4

to explain how the DNA could have been transferred from Boatman to K.S. The court found that Boatman's DNA was present on swabs taken from K.S.'s anal *and vaginal* areas. This is significant because the court relied on this finding to explain its theory of how Boatman's DNA was transferred to K.S. The court theorized—absent any argument by Boatman—that Boatman and his wife had sex, the wife used a rag to clean herself, and then K.S. used the same rag to wipe up, transferring Boatman's DNA to K.S.

The court's findings and theory about the DNA transfer are unsupported by any evidence offered by the State or the defense. The nurse practitioner who performed the sexual assault examination testified that she took swabs *only* from K.S.'s anal region. Nothing in the record supports the court's supposition that Boatman and his wife had sex before the alleged sexual battery— much less that Boatman's wife cleaned up afterwards with the same rag that later was used by K.S. Even if these events had occurred, K.S. testified that she used a rag to wipe her vaginal area after Boatman had sex with her—she never testified that she cleaned her anal region where the nurse swabbed for DNA. These findings and theories by the court were wholly speculative, without foundation in the record, and appeared for the first time in the order excluding K.S.'s hearsay statements.[2] This was a departure from the essential requirements of law. *White*, 152 So. 3d at 635.

---

evidence of the defendant's participation in the case is wholly circumstantial. *Knight v. State*, 186 So. 3d 1005, 1009-10 (Fla. 2016). The standard does not apply to the trial court's determination of whether to exclude the child victim hearsay statements.

[2] The State was prohibited from introducing the DNA evidence to corroborate the trustworthiness of K.S.'s hearsay statements. *Idaho v. Wright*, 497 U.S. 805, 822 (1990) ("[H]earsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial."). Instead, the State had to show that the statements were independently reliable. *N.W. v. M.W.*, 41 So. 3d 383, 384 (Fla. 2d DCA 2010) (explaining that the trial court applied the wrong standard for admitting evidence under the child hearsay exception when it found a statement

The court also diagnosed K.S. with a psychiatric disorder without an evidentiary foundation. Although it determined that there was no evidence that K.S. fabricated her reports that Boatman raped her, the trial court opined that K.S. suffered from a "feminine Oedipal complex (Electra complex)."[3] But there was no medical evidence in the record to support the court's clinical diagnosis of the child victim. Although a nurse performed a sexual assault examination of K.S., K.S. was never examined by a psychologist or psychiatrist. The only evidence in the record with even a remote nexus to the court's diagnostic finding was a self-serving statement made by Boatman during a police interrogation that K.S. had recently started to "rub" and "grind" on him. The court's order injected for the first time in the proceeding any notion that K.S. suffered from a psychiatric disorder. This, too, was a departure from the essential requirements of the law. *See Walker v. State*, 55 So. 3d 718, 720-21 (Fla. 1st DCA 2011) (granting certiorari when the court considered an exhibit submitted after the close evidence because the opposing party had no opportunity to respond).

Because the order departs from the essential requirements of law and irreparably harms the State, we GRANT the petition and QUASH the order excluding K.S.'s hearsay statements. *See State v. Harbeson*, 651 So. 2d 1249 (Fla. 2d DCA 1995) (granting certiorari relief where pretrial order excluded child victim hearsay evidence).

JAY and M.K. THOMAS, JJ., concur.

---

unreliable because of the lack of medical evidence). The trial court's insertion of the DNA evidence into the proceeding created a catch-22: while the court relied on the DNA evidence and advanced a theory of Boatman's innocence based on the DNA evidence, the State could not offer the DNA evidence to corroborate K.S.'s hearsay statements.

[3] An Electra complex is "the female counterpart of the Oedipus complex, involving the daughter's love for her father, jealousy toward the mother." *APA Dictionary of Psychol.*, ELECTRA COMPLEX, https://dictionary.apa.org/electra-complex. (last visited May 29, 2019).

6

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Ashley Moody, Attorney General, and Virginia Harris, Assistant Attorney General, Tallahassee, for Petitioner.

Andy Thomas, Public Defender, and Megan Long, Assistant Public Defender, Tallahassee, for Respondent.